VINCENT J. McBRIEN v. WARDEN, STATE PRISON

KING, C. J., MURPHY, ALCORN, SHANNON and HOUSE, Js.

Argued December 10, 1965—decided January 13, 1966

*William D. Graham,* with whom, on the brief, was *Howard H. Orenstein,* for the appellant (plaintiff).

*John D. LaBelle,* state's attorney, with whom, on the brief, were *George D. Stoughton* and *Edward J. Daly, Jr.,* assistant state's attorneys, and *Brandon J. Hickey,* special assistant state's attorney, for the appellee (defendant).

KING, C. J.  The petitioner, on April 8, 1939, entered a plea of not guilty to an indictment charg-

ing him with murder in the first degree. He was at all times represented by competent counsel. Thereafter, on April 22, 1939, he requested permission to change his plea. Permission was granted, and he pleaded guilty to murder in the second degree. This plea was accepted on May 8, by the single judge regularly assigned to hold the criminal session. The petitioner was thereupon sentenced by the same judge to life imprisonment, which is the mandatory punishment provided upon conviction of murder in the second degree. Neither the petitioner nor his counsel made any objection to the procedure followed.

The instant action of habeas corpus was instituted on or about September 15, 1964, a little over a quarter of a century after the sentencing of the prisoner, and in essence claims a lack of jurisdiction of the subject matter on the part of the sentencing court, as then constituted, because of claimed violations of the provisions of the then applicable statute, which was § 1685c of the 1935 Cumulative Supplement to the Revision of 1930. This act, which, as amended, is now General Statutes § 53-9, read as follows: "Sec. 1685c. MURDER; DEGREE; TRIAL. All murder perpetrated by means of poison, or by lying in wait, or by any other kind of wilful, deliberate and premeditated killing, or committed in perpetrating, or in attempting to perpetrate, any arson, rape, robbery or burglary, or injury to any person or property by means of any explosive compound, shall be murder in the first degree; and all other kinds of murder shall be murder in the second degree; and the degree of the crime charged shall be alleged in the indictment; but the jury before which any person indicted for murder shall be tried may find him guilty of homi-

cide in a less degree than that charged; and, if he shall be convicted by confession, the court, to be composed of the judge presiding at the session and two other judges to be designated by the chief justice of the supreme court of errors, shall hear the witnesses in such case, and such judges, or a majority of them, shall determine the degree of the crime and render judgment and impose sentence accordingly."

The petitioner's claims as to the violation of the provisions of the act are really threefold: (1) His plea of guilty to murder in the second degree should have been taken by a special three-judge court constituted as provided in the statute. (2) Thereafter that court should have heard evidence and determined the degree of the homicide, that is, whether murder in the second degree or manslaughter. (3) Thereafter the petitioner should have been sentenced by the three-judge court in accordance with their conclusion, or that of a majority of them, as to the degree of the homicide.

Predicated upon these claims, the foregoing basic claim is made to the effect that the single-judge court which did sentence the petitioner was without jurisdiction to act in the premises, that is, was without jurisdiction of the subject matter, and that therefore the conviction and the sentence were void.

I

A cursory reading of the quoted act of 1935 might seem to confirm the claims of the petitioner. But a more careful reading, and a consideration of the provisions of the act in the light of their legislative evolution, lead inevitably to a rejection of his claims.

We do, however, agree with the petitioner that

the phrase "convicted by confession" refers to a judicial confession, that is, a plea of guilty, and that the word "confession" has no reference to an extrajudicial confession made out of court. See *State* v. *Carta,* 90 Conn. 79, 81, 96 A. 411; 20 Am. Jur., Evidence, § 479.

The vice in the claims of the petitioner is that they are predicated upon a complete disregard of the vital distinction in the controlling statutes between the functions of the court in the trial without a jury of one indicted for murder in either degree and its functions in the sentencing of a person who has pleaded guilty to murder in either degree. Thus the petitioner is forced to, and does, claim that the word "crime," the degree of which is to be determined by the court in the case of a plea of guilty to an indictment charging murder, means the same thing as "homicide" as used in the phrase conferring on the trier the power, on a trial under a murder indictment, to find the accused "guilty of homicide in a less degree than that charged" in the indictment.

Prior to 1846 there had been no degrees of murder, and the punishment for murder had been death. Statutes, 1838, p. 144, § 3; *State* v. *Walters,* 145 Conn. 60, 71, 138 A.2d 786, appeal dismissed, 358 U.S. 46, 79 S. Ct. 70, 3 L. Ed. 2d 45; *State* v. *Rossi,* 132 Conn. 39, 41, 42 A.2d 354; *State* v. *Dowd,* 19 Conn. 388, 391. But then, as now, the constitution provided that, except in cases arising during military service, "no person shall be holden to answer for any crime, the punishment of which may be death or imprisonment for life, unless on a presentment or an indictment of a grand jury". Conn. Const. (1818) art. I § 9. This provision was implemented by statute. Section 7 of title 45 of the Stat-

utes of 1821, page 260, now General Statutes § 54-45, provided that a crime punishable by death or life imprisonment could be prosecuted only upon indictment. Section 8 of title 45 of the 1821 Statutes, page 261, now General Statutes § 54-46, however, provided that all crimes not punishable by death or life imprisonment could be prosecuted on an information without the intervention of a grand jury. In practice, grand jury indictments have not been used except in cases involving crimes punishable by death or life imprisonment. See 2 Swift, Digest, p. 370, and cases such as *Romero* v. *State,* 60 Conn. 92, 94, 22 A. 496.

Prior to the division of murder into two degrees in 1846, the only plea to the merits which could have been made to an indictment for murder would have been guilty or not guilty. There could have been no plea of guilty of manslaughter, or of any crime other than the murder charged in the indictment. It should be pointed out, however, that courts were reluctant to accept a plea of guilty in a capital case. See *State* v. *Carta,* supra; 4 Wharton, Criminal Law and Procedure § 1900, p. 768. For this reason it is unlikely that capital cases were often in fact disposed of on pleas of guilty.

If a grand jury failed to find that the state had made out a case of murder, as charged in the indictment, they did not bring in an indictment for manslaughter but merely failed to find "a true bill." *Lung's Case,* 1 Conn. 428; 2 Swift, Digest, p. 372. If this occurred, the state was free to institute a prosecution on an information for manslaughter, which did not in 1821, and does not now, carry a penalty of life imprisonment. Statutes, 1821, p. 261, § 8 (now General Statutes § 54-46), p. 151, § 4 (now General Statutes § 53-13).

Court trials of criminal cases were not permissible until authorized by statute. *State* v. *Maine,* 27 Conn. 281. This authority was first granted by chapter 56 of the Public Acts of 1874. Prior to the enactment of that statute, any determination of guilt on a trial could be made only by a jury.

On a trial on an indictment for murder, it was felt desirable, as far back as 1830, to make sure that the petit jury, in accordance with the common-law rule, could return a verdict of guilty of manslaughter if the proof warranted even though only murder would have been charged in the indictment. For this reason it was provided in chapter 1, § 137, of the Public Acts of 1830, that "[i]f any person be indicted for the crime of murder, and the jury cannot agree to convict him of that crime, they may, if the proof be sufficient, convict him of the crime of man-slaughter . . . ." This act was carried into the Statutes of 1838 as § 136 of title 20, page 176, and was a mere codification of the common-law rule. *State* v. *Rossi,* supra; *State* v. *Nichols,* 8 Conn. 496, 498.

We turn now to statutory provisions incident, and subsequent, to the division of murder into two degrees by chapter 16, § 1, of the Public Acts of 1846. The more atrocious types of murder were enumerated and classified as murder in the first degree, and all other kinds of murder were classified as murder in the second degree. The death penalty was retained for murder in the first degree, but life imprisonment was provided for murder in the second degree. *State* v. *Walters,* supra; *Smith* v. *State,* 50 Conn. 193, 196.

The General Assembly included in chapter 16, § 1, of the 1846 act a provision that "the jury before whom any person indicted for murder shall be tried,

shall, if they find such person guilty thereof, ascertain in their verdict whether it be murder of the first or second degree; but if such person shall be convicted by confession, the court shall proceed, by examination of witnesses, to determine the degree of the crime, and to give sentence accordingly." Section 1 of the 1846 act became § 3 of title 6, page 223, of the Statutes of 1849. The word "crime" necessarily refers to the crime of murder since that is the only crime with which that act is concerned. Furthermore, under an indictment for murder, which is what the act refers to, any plea of guilty would necessarily be a plea of guilty to murder. As court trials in criminal cases had not yet been authorized, the court's function in a murder case was to impose sentence, and, except on a plea of guilty, the degree was ascertained by the jury, as provided by statute, upon conviction after a trial on the merits. The act permitting the jury, under an indictment charging murder, to bring in a verdict of guilty of manslaughter was retained in another section. Statutes, 1849, p. 260, § 167. And if the accused pleaded guilty to murder in the second degree, the court would have no occasion to ascertain the degree of the murder since the plea itself would have already established that.

It perhaps could be claimed that a literal construction of the terms of the two foregoing statutes (Statutes, 1849, p. 223, § 3, p. 260, § 167) would allow the jury, on a trial under an indictment charging murder in the second degree, or a court, under a plea of guilty to murder in the second degree, to determine that actually the accused was guilty of murder in the first degree. Such a construction would be so unreasonable that the mere statement of it would result in its rejection, apart from any

question of its constitutional or other infirmities. Indeed, such a claim might be made under General Statutes § 53-9 (Rev. 1958), in the case of a conviction by confession, but this petitioner naturally urges no such construction, nor would we consider its adoption.

The next important statutory change was the provision for court trials in criminal cases upon the election of the accused. This change came in chapter 56 of the Public Acts of 1874. It has been carried over into what is now § 54-82 of the General Statutes. It conferred on the court the powers and duties of the jury in a trial on the merits. These would include, in a trial on a murder indictment, not only the duty, upon a conviction of murder, of determining the degree of the murder but also the power to convict of manslaughter.

One further statute enacted in 1870 should be noted. Section 1 of chapter 73 of the Public Acts of 1870 provided that "[i]n all indictments for murder, the degree of the crime charged shall be alleged; *provided,* the jury may find the accused guilty of a less crime than that charged, in the same manner as if this act had not been passed." This section was the origin of the requirement still existing in our present statute (§ 53-9) that the indictment specify the degree of the crime charged. Necessarily the "crime charged" refers only to murder, since the statute involves only a murder indictment, but the common-law right of the jury, on a trial, to bring in a verdict of manslaughter, that is, a "less crime than that charged" was retained.[1]

In the Revision of 1875, the statutes we have dis-

---

[1] It is settled law that under a murder indictment the trier can find guilt only as to some type of homicide. *State* v. *Rossi,* 132 Conn. 39, 41, 42 A.2d 354.

cussed were combined into two sections. The provision of chapter 56 of the Public Acts of 1874 authorizing criminal cases to be tried to the court, upon election of the accused, was included in § 1 of part 5 of chapter 13 of title 20, page 537, of the Revision of 1875.

The other statutes relating to murder were placed in § 1 of chapter 2 of title 20, page 498, of the Revision of 1875. The provision of chapter 1, § 137 of the Public Acts of 1830 authorizing the jury to convict of manslaughter on a murder indictment and that portion of chapter 16, § 1, of the Public Acts of 1846 requiring the jury on a conviction of murder after trial to find the degree of the murder were combined in a single clause providing that "the jury before which any person indicted for murder shall be tried may find him guilty of homicide in a less degree than that charged." Rev. 1875, p. 498, § 1. The reason for the use of the word "homicide" is obvious. That would authorize a verdict of murder in the second degree on an indictment for murder in the first degree or a manslaughter verdict on an indictment for murder in the first or second degree.

The provision of the 1846 act as to the court's function on a plea of guilty to a murder indictment was carried over unchanged in the following language: "and if . . . [the accused] shall be convicted by confession, the court shall examine witnesses to determine the degree of the crime and give sentence accordingly." Rev. 1875, p. 498, § 1.

In 1927, it came to be felt that the burden of having a murder case tried to the court, when the accused so elected, should not be imposed upon a single judge, and chapter 107 of the Public Acts of 1927 was enacted providing that in a trial to the

court of a crime for which the punishment could be death or life imprisonment, the court "shall be composed of three judges consisting of the judge presiding at the term and two other judges to be designated by the chief justice of the supreme court of errors." It is to be noted that this act referred to trials by the court, not to sentencing by the court on ascertainment of guilt by the jury or by plea of guilty.

The language of § 1, chapter 2, title 20, page 498, of the Revision of 1875 was carried over into § 6043 of the Revision of 1930. The 1874 provision for the trial of criminal cases by the court, as modified by the 1927 requirement that the court, where the accused is charged with a crime for which the punishment may be death or life imprisonment, should be composed of three judges, appears as § 6477 of the Revision of 1930.

Section 6043 was amended by § 1685c of the 1935 Cumulative Supplement, already quoted in full, to provide that in the case of a plea of guilty to an indictment for murder, the three-judge court should hear witnesses and determine the degree of the crime and thereafter pronounce sentence. The obvious purpose of the 1935 amendment was to impose on three judges, rather than on one, the duty, on a plea of guilty to an indictment for murder, of hearing witnesses and determining the degree of the crime charged, that is, the degree of the murder. It had nothing to do with the power of a court or jury, on a trial, to bring in a verdict of guilty of a homicide of a type less than that charged.

The vital distinction is between the determination of the degree of the crime on a trial for murder and that on a plea of guilty of murder. On a trial,

the jury, or a three-judge court at the election of the accused, may find him guilty of a lesser degree of homicide, that is, of murder in the second degree or of manslaughter, as the evidence may warrant. This is pursuant to the authority granted in what is now General Statutes § 54-82. But on a plea of guilty to an indictment, which must specify either murder in the first or in the second degree, the degree of the crime (not the degree of the homicide), which is murder, must be determined by the three-judge court after hearing witnesses. This is pursuant to the authority and mandate of what is now General Statutes § 53-9. But since murder in the second degree is the lowest degree of murder under our law, on a plea of guilty to murder in the second degree there is no determination of the degree of murder to be made, and consequently no occasion for a three-judge court. A determination of the degree of the murder on a plea of guilty is needed only when there is a plea of guilty to an indictment for murder in the first degree. There is no merit in the petitioner's claim that on a plea of guilty to murder in the second degree there is any degree of murder to be determined by any court, or that there is any power, in any court, on a plea of guilty of murder as distinguished from a trial for murder, to ascertain any degree of homicide below that of murder.

## II

While this determination is dispositive of this case, adversely to the claims of the petitioner, the result is powerfully reinforced, if any reinforcement were necessary, by the attitude of the General Assembly itself.

The claim raised by this petitioner has twice

before been made and rejected in a published opinion. It was raised in 1956 in the United States District Court for the District of Connecticut in *United States ex rel. Oakley* v. *Cummings,* 152 F. Sup. 141, and decided against the petitioner. It was raised again in 1956 in the Superior Court in *Jones* v. *Cummings,* 20 Conn. Sup. 126, 125 A.2d 854, and again decided against the petitioner. If the decisions in these cases had not correctly interpreted the legislative intent, it is reasonable to believe that the 1957, 1959, 1961, 1963 or 1965 sessions of the General Assembly would have reworded the statute to express the legislative intent. In addition, during this period, the General Assembly approved the 1958 Revision of the General Statutes. Its failure to alter the statute before adopting the revision is further evidence of the accuracy of the interpretation these cases accorded it.

Indeed, in 1963, by Public Act No. 322, the General Assembly so amended the statute (§ 53-9) as to remove any possible justification for a claim such as that made by this petitioner. See cases such as *Floyd* v. *Fruit Industries, Inc.,* 144 Conn. 659, 669, 136 A.2d 918.

### III

For over one hundred years, ever since murder was divided into two degrees in 1846, the profession and the judiciary have understood the statute (Public Acts 1846, c. 16, § 1 [now General Statutes § 53-9]) "to require the court to determine on evidence the degree of the crime only if the [judicial] confession was to murder in the first degree." *United States ex rel. Oakley* v. *Cummings,* supra, 144. A construction by bench and bar alike over such a long period is entitled to great weight.

*United States ex rel. Oakley* v. *Cummings,* supra; *Mattoon's Appeal,* 79 Conn. 86, 90, 63 A. 784.

### IV

The applicable statutes neither now nor at any previous time have required a three-judge court, or, before the 1935 amendment, a one-judge court, on a plea of guilty to murder in the second degree to ascertain the degree of the crime. The basic claim of the petitioner is without merit, and his other claims require no discussion.

There is no error.

In this opinion the other judges concurred.