State of Connecticut *v.* Edward R. Gyuro

King, C. J., Alcorn, House, Thim and Ryan, Js.

392

Argued April 4—decided April 23, 1968

*W. Paul Flynn,* with whom, on the brief, were *Frank J. Raccio, Bernard P. Kopkind,* and *Charles L. Flynn,* for the appellant (defendant).

*Richard A. Schatz,* assistant state's attorney, with whom, on the brief, was *John D. LaBelle,* state's attorney, for the appellee (state).

ALCORN, J. The defendant was presented in the Superior Court on an information in two counts filed by the state's attorney. The first count accused the defendant of attempted larceny in violation of

General Statutes §§ 54-198 and 53-63. The second count accused him of breaking and entering without permission in violation of General Statutes § 53-75. Both of the offenses charged were infamous crimes. *Drazen* v. *New Haven Taxicab Co.,* 95 Conn. 500, 508, 111 A. 861. The defendant moved to quash or dismiss the information on the ground that he was being required to answer for infamous crimes without presentment to or indictment by a grand jury in violation of the fifth and fourteenth amendments to the constitution of the United States. The court denied the motion, and the defendant, following a not guilty plea, was convicted by a jury on both counts. Motions to set aside the verdict and for a new trial were denied, and judgment was rendered on the verdict. The defendant has appealed from that judgment.

We first consider the defendant's claim that his rights under the constitution of the United States were violated because he was not presented for indictment before a grand jury. An identical claim was made in a recent habeas corpus proceeding in the Superior Court arising out of breaking and entering and larceny convictions; *Smith* v. *Warden,* 25 Conn. Sup. 509, 209 A.2d 521; in which the application for the writ was denied, and the United States Supreme Court, as recently as June 1, 1965, dismissed an appeal and denied certiorari. *Smith* v. *Warden,* 381 U.S. 411, 85 S. Ct. 1584, 14 L. Ed. 2d 698. The defendant nevertheless urges us to reexamine our decision in *Kennedy* v. *Walker,* 135 Conn. 262, 63 A.2d 589, aff'd, 337 U.S. 901, 69 S. Ct. 1046, 93 L. Ed. 1715, rehearing denied, 337 U.S. 934, 69 S. Ct. 1493, 93 L. Ed. 1740, which discusses the reasons why the federal constitutional requirement of a grand jury indictment does not apply in the

case of infamous crimes such as the present ones. We find nothing in the more recent decisions of the United States Supreme Court which requires a change in the rule in that case. *Beck* v. *Washington,* 369 U.S. 541, 545, 82 S. Ct. 955, 8 L. Ed. 2d 98; *State* v. *Jones,* 153 Conn. 451, 457, 217 A.2d 691; see also *United States ex rel. Cooper* v. *Reincke,* 333 F.2d 608, 611 (2d Cir.), cert. denied, 379 U.S. 909, 85 S. Ct. 205, 13 L. Ed. 2d 181. Article first, § 8, of the constitution of Connecticut requires an indictment by a grand jury only in the case of crimes punishable by death or life imprisonment, and for all other crimes the prosecution may be initiated by complaint or information. General Statutes § 54-46. The defendant was properly presented for trial on the information filed by the state's attorney. *State* v. *Stallings,* 154 Conn. 272, 278, 224 A.2d 718. The defendant's claim that he should have been charged only in an indictment by a grand jury is without merit, and the court properly denied the motion to quash or dismiss the information.

Another claim made by the defendant is that he was not arrested under authority of a warrant supported by oath or affirmation and that, in this respect also, his constitutional rights were violated. The constitutional right involved is not specified, but the brief indicates reliance on the rule of *State* v. *Licari,* 153 Conn. 127, 132, 214 A.2d 900. Incident to this claim are attacks on the court's failure "to find that the defendant was not arrested by a warrant supported by oath and affirmation, which fact is apparent on the face of the record" and also on the court's finding that the defendant has waived the claim of an illegal arrest which he now makes. The court found that no claim of an illegal arrest was made until after the trial or until this appeal

was taken. These findings are unchallenged. There was no request made of the court to find that the defendant "was not arrested by a warrant supported by oath and affirmation." The record fails to disclose how the defendant was arrested. So far as appears he may have voluntarily surrendered. Nothing is laid before us except the fact that, in the Circuit Court, after the defendant had pleaded not guilty, that court found probable cause and ordered the defendant bound over to the Superior Court on a charge of attempted larceny made on the complaint of the prosecuting attorney of the Circuit Court, and, thereafter, that he was informed against, pleaded not guilty, and was tried and convicted in the Superior Court on that charge and on the added charge of breaking and entering. *State* v. *Stallings,* supra. There is no merit to the claim of an illegal arrest which is now made for the first time and no indication that the defendant has been denied due process of law. *Reed* v. *Reincke,* 155 Conn. 591, 600, 236 A.2d 909; *State* v. *Darwin,* 155 Conn. 124, 141, 230 A.2d 573.

The remaining assignments of error concern an asserted denial by the court of a motion to direct a verdict, the charge to the jury and a ruling on evidence. No basis is shown for making any correction in the finding.

The jury could have found the following facts: On the main floor of the Lord and Taylor store in West Hartford there was, at the time of the incidents involved in this case, what is called a fur vault, consisting of an enclosure approximately seventeen feet by eight feet in size, formed on one side by a masonry wall and on the other three sides by wooden stud partitions eight feet high. A wire mesh ceiling was nailed to the top of the wooden partitions below

the ceiling of the room in which the vault was situated. The only means of entering the fur vault was through a door in one side. This door was kept locked, and the key was kept in an unlocked drawer of a desk two feet away from the door of the fur vault. Nearby, on the same floor of the store was an accessory stock room used for storage, but not for the storage of furs. On October 15, 1964, at about 5:15 p.m., a man, dressed in a uniform such as that used by porters and maintenance employees of the store, was seen at the door of the fur vault grasping the knob of the door. Porters and maintenance employees are not permitted to enter the fur vault or to handle furs. A half hour later the man was seen still standing at the door. At 6:15 p.m. the defendant was seen bending over a box or carton in the accessory stock room. He was wearing clothes similar to the uniform worn by store maintenance men and claimed to be changing light bulbs in the room. He left the accessory stock room and ran down a stairway to a lower floor and out of the store, followed by the assistant manager of the store who lost sight of him in the parking lot outside. When the police arrived, the box in the accessory room was opened and was found to contain five mink coats. In the fur vault were five empty hangers. When furs are sold they are taken on the hanger to a packing station in another location, where they are wrapped. No furs were sold on October 15, 1964, and no personnel of the store was authorized to take furs into the accessory stock room. Each of the five mink coats had identifying numbers and a price tag affixed to it. The price tag indicated the retail price for which that coat would be sold by the store. The five coats were returned to the fur vault and later to the Lord and Taylor New York store. Four of the coats

were thereafter sold for $995, $1095, $2000, and $2400 respectively. The fifth coat, priced at $1995, was not sold.

We have recited the foregoing facts from the claims of proof in the finding because of the peculiarities of this appeal. As previously related, one of the defendant's claims is that the court erred "[i]n denying defendant's Motion for a Directed Verdict." Actually the record does not disclose that any such motion was ever made or denied. On the other hand, the record does disclose that a motion to set aside the verdict was made on the ground that the verdict was contrary to law and against the evidence and that this motion was denied. The denial of this motion is not, however, assigned as error. The court's action on either of these motions, if properly assigned as error, would, of course, be tested in the light of the evidence printed in the appendices to the briefs. *State* v. *Stallings,* 154 Conn. 272, 283, 224 A.2d 718; *State* v. *Vars,* 154 Conn. 255, 258, 224 A.2d 744; *State* v. *Mallette,* 153 Conn. 584, 585, 219 A.2d 447; *Lombardi* v. *J. A. Bergren Dairy Farms, Inc.,* 153 Conn. 19, 23, 213 A.2d 449. Both the defendant and the state appear to be unaware of the failure to make a proper issue of either motion and of the consequent defects in this phase of the appeal because both have briefed and argued the question whether "the state's evidence was sufficient to convict." No such question is assigned as error, however. Such an issue, if raised, would also be resolved on an examination of the evidence. *State* v. *Schindler,* 155 Conn. 297, 301, 231 A.2d 652. There is, therefore, no issue before us as to whether the evidence was sufficient to support the verdict on either count. We have decided, however, to consider the discussion of the issue by the parties so far as it

bears on the attacks made on the charge of the court. The correctness of the charge, of course, is tested by the finding. *Lucier* v. *Meriden-Wallingford Sand & Stone Co.,* 153 Conn. 422, 424, 216 A.2d 818.

The error assigned in a portion of the charge relating to the first count is limited to an issue which is also embraced in the assignment of error concerning a ruling on evidence. In proving the value of the mink coats which were the subject of the attempted larceny, an essential element under the first count, the state did not produce the coats. Instead, it offered, through a custodian of the business records of the store, testimony and records concerning the retail price of the coats as established by Lord and Taylor and testimony as to the price for which four of the coats had later actually been sold. The defendant objected on the ground that the value of the coats could not be proved without producing the coats in court. The court overruled the objection and admitted this evidence. The ruling was correct. The value of the coats was their market value, that is, the price at which they would probably have been sold in the regular course of business at the time when and the place where the attempted theft occurred, and any evidence bearing on that question could properly be considered. *People* v. *Irrizari,* 5 N.Y.2d 142, 146, 156 N.E.2d 69. Subsequently, the court charged the jury adequately as to the necessary proof of market value and that it was not necessary for the state to introduce the articles themselves in evidence. There was no error in this portion of the charge.

Error is also assigned in a portion of the charge concerning the second count of breaking and entering. Section 53-75 of the General Statutes under which the defendant was charged in the second count

of the information makes it a crime to break and enter "any building . . . in the possession of another used as a place for the custody of property . . . without the permission, express or implied, of the person or persons legally in possession thereof." From the finding it is clear that no effort was made to establish the manner in which defendant gained entry to the store. Instead, the state sought to prove a violation of the statute by proof of a breaking and entering of the fur vault, which was located inside the store.

In the portion of the charge on the second count which is assigned as error the court charged the jury, so far as now material, as follows: "Now, the evidence indicated that the Lord & Taylor building or the store was a large building, a single building. Now, if there was a breaking and entering of a door, of an enclosed room within that building, then, there would be a breaking and entering into the building, even though the person so breaking and entering into the room or enclosure which was closed by a door which was shut, even though the person who did enter into such room had come into the store lawfully, because a storekeeper or an owner of a store invites the public to enter into the store so when a person enters into the store, he enters with the permission of the owner but if that person goes into an area which is closed by a door and set off to which he has not been invited to enter and he breaks and enters into that place through the door, he would be violating this statute of breaking and entering into a building, provided the other elements exist, the necessary elements of this statute. Now, the State claims that this fur area was an enclosure with a door and a key to it, and it was shut off from the rest of the store."

At the conclusion of the charge counsel for the defendant excepted to the quoted portion on the ground that the court had charged that the fur vault was a building within the meaning of § 53-75 as a matter of law, whereas the question should have been left to the jury as a question of fact. The specific objection was as follows: "Now, I want to object to part of the charge where your Honor talked about breaking and entering into a room which is some enclosure and is guilty of breaking and entering. I think that should be left to the jury. I think your Honor said that the building is an enclosed area with a door and the fur vault was such a place. Now, your Honor has taken away from the jury the question of whether or not this was a building. You found as a matter of law that it was a building, and I object on the grounds that this is an essential element of the crime that was found, so I object to that, your Honor please. The other thing was that your Honor said that the State has to prove and has the burden of proving a breaking and entering in the fur vault, and it is our contention that breaking and entering into a fur vault is not a breach of the law. It is a fact for the jury. . . . Your Honor made an opening statement that the State has to prove a breaking and entering into the vault before you can find the defendant guilty. . . . Your Honor has said by making that statement or you are precluding the fact that the jury must find whether or not this fur vault was a building within the meaning of the law, and that is the reason. I think that is all I have."

There was no request to charge on the subject, but the exception distinctly stated the matter objected to and the ground of the objection as required by the rule. Practice Book § 249; *Bevins* v. *Brewer,* 146 Conn. 10, 13, 147 A.2d 189.

No exception was taken to the charge on the ground that the rule stated by the court was erroneous. Consequently, the attack which is made on this portion of the charge does not require us to consider or pass upon the accuracy of the court's instruction that breaking and entering the fur vault would amount to breaking and entering a building within the meaning of General Statutes § 53-75. The only issue presented is whether the court should properly have undertaken to determine that proposition as a matter of law or should have submitted it to the jury for determination as a question of fact. The court was correct in treating the subject as a matter of law. *Pascale* v. *Board of Zoning Appeals,* 150 Conn. 113, 116, 186 A.2d 377; *Park Regional Corporation* v. *Town Plan & Zoning Commission,* 144 Conn. 677, 684, 136 A.2d 785. Consequently, the error assigned in this portion of the charge must fail.

There is no error.

In this opinion the other judges concurred.