## STATE OF CONNECTICUT *v.* RUSSELL M. WHITNEY

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued October 1—decided November 6, 1968

*John D. Salling,* for the appellant (defendant).

*Donald A. Browne,* assistant state's attorney, with whom, on the brief, was *Otto J. Saur,* state's attorney, for the appellee (state).

KING, C. J. On April 6, 1965, Russell M. Whitney was charged with having under his control certain narcotic drugs in violation of § 19-246 of the General Statutes. A jury found him guilty as charged, and he assigns as error the refusal of the trial court to set aside that verdict.

The facts are substantially as follows: A known narcotics user, Carmen Parisi, agreed to cooperate with state and federal authorities in the investigation of illegal narcotics activities and proceeded to work with two federal agents. One method of investigation used by the agents was to take Parisi around the Norwalk area in an automobile and have him point out narcotics violators. On one such occasion, Parisi identified the defendant as a violator.

Sometime later, Parisi introduced Gerald F. Carey, one of the agents, to the defendant, and at that meeting Carey gave the defendant $10, and the defendant promised to purchase some narcotics for Carey and deliver them later that evening. The defendant did not deliver the narcotics that night. On the following evening, Agent Carey and Parisi went to the defendant's home and asked the defendant what he had done with the money given him on the previous night. The defendant said that he had spent the money, but he agreed to meet them later that evening and see what he could do to make up for their $10 loss.

They met as planned, and the defendant, Agent Carey, Parisi and Patrick Stack, a friend of the

defendant and known to Parisi as a narcotics user, proceeded to drive to Bridgeport, where the defendant said that he would obtain narcotics for them. On the way to Bridgeport, the defendant asked Carey for another $10 with which to purchase the narcotics. Carey gave him the money. On arriving in Bridgeport, after leaving Carey and Stack in the automobile, the defendant and Parisi together went to meet a man to whom the defendant paid the $10 and who delivered two small glassine bags to the defendant. On the way back to the automobile, the defendant handed these bags to Parisi, who delivered them to Agent Carey in the automobile. After the return to Norwalk, Agent Carey and others made tests which showed that these bags contained heroin.

The defendant claims that evidence of entrapment precluded the rendition of the verdict of guilty and required that it be set aside for lack of evidence to support it.

Entrapment is inconsistent with guilt in a criminal case and if it existed entitles the defendant to an acquittal. *State* v. *Marquardt,* 139 Conn. 1, 4, 89 A.2d 219. Although entrapment is generally referred to as a defense, it is more properly treated as a fact inconsistent with guilt. Therefore, as soon as substantial evidence of entrapment comes into the case, the burden of proving the essential elements of the crime charged, which rests throughout upon the state, necessarily includes the negation of the issue of entrapment, in the same way as if substantial evidence of insanity had come into the case. See *Kadis* v. *United States,* 373 F.2d 370, 373 (1st Cir.); *State* v. *Joseph,* 96 Conn. 637, 639, 115 A. 85.

Entrapment has been defined as " 'the inducement of one to commit a crime not contemplated by him

for the mere purpose of instituting [a] criminal prosecution against him.'" *State* v. *Marquardt,* supra (quoting *State* v. *Jarvis,* 105 W. Va. 499, 500, 143 S.E. 235); *Sorrells* v. *United States,* 287 U.S. 435, 454, 53 S. Ct. 210, 77 L. Ed. 413. Read literally, this definition might seem to include all situations where the actions of a government agent induce an individual to commit a particular crime. If that were so, then clearly the defendant here would be entitled to an acquittal since no one claims that he would have performed, or even contemplated the performance of, the particular acts in question involving Parisi and Agent Carey had it not been for their actions. See DeFeo, "Entrapment as a Defense to Criminal Responsibility: Its History, Theory and Application," 1 U. San Fran. L. Rev. 243, 259.

The doctrine of entrapment is not so narrowly and mechanically defined and applied in the cases as the defendant claims. Rather, it has a broader meaning more in keeping with the recognized need that "a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal." *Sherman* v. *United States,* 356 U.S. 369, 372, 78 S. Ct. 819, 2 L. Ed. 2d 848. The general rule is: "[I]f the criminal intent or the willing disposition to commit the crime originates in the mind of the accused and the criminal offense is completed, the fact that the opportunity is furnished or the accused is aided in the commission of the crime in order to secure the evidence necessary to prosecute him for it constitutes no defense. On the other hand, if the evil intent and the criminal design originate in the mind of the government agent and the accused is lured into the commission of the offense charged in order to prosecute him for it,

when he would not have committed an offense of that general character except for the urging of the agent, no conviction may be had." *State* v. *Marquardt,* 139 Conn. 1, 5, 89 A.2d 219; see also *Sherman* v. *United States,* supra, 372; *State* v. *Taylor,* 153 Conn. 72, 84, 214 A.2d 362; 21 Am. Jur. 2d, Criminal Law, § 144. But it is an offense of that general character, and not the precise offense as to time, place and persons involved, which must be the subject of inquiry.

The question, therefore, is not whether the accused would have committed the particular act for which he is being prosecuted but whether the police have induced an otherwise innocent person to commit a crime the idea of which originated in the minds of the police. As used here, "innocent" means "the absence of a predisposition or state of mind which readily responds to the opportunity furnished by the officer or his agent to commit the forbidden act with which the accused is charged." 21 Am. Jur. 2d 214, Criminal Law, § 144.

Since the issue of entrapment raises questions as to the defendant's state of mind, evidence may be adduced by either side tending to show that state of mind. *Sherman* v. *United States,* supra, 373; note, 33 A.L.R.2d 883, 908 § 6; 22A C.J.S., Criminal Law, § 618 n.66; DeFeo, op cit., p. 263. Thus, the state may introduce evidence as to an existing course of similar criminal conduct on the part of the defendant, his already formed design to commit crimes of the general nature of that with which he is charged, or his willingness to commit the crime as shown by his ready acquiescence in its commission. *United States* v. *Becker,* 62 F.2d 1007, 1008 (2d Cir.); note, 33 A.L.R.2d 883, 886 § 3, and cases cited, 908 § 6.

The state's evidence, as already noted, tended to prove not only control, which was the crime charged, but also what amounted to a procurement, if not an actual sale, of the drugs. The jury were instructed as to the issue of entrapment, and the correctness of the instructions is not challenged. Since entrapment is a question of fact to be determined by the jury, their verdict of guilty must stand if the evidence warrants, beyond a reasonable doubt, a conclusion of guilt. *State* v. *Davis,* 153 Conn. 228, 229, 215 A.2d 414.

Evidence before the jury tending to prove the element of predisposition to commit crimes of the general nature of those charged, as that element is involved in the issue of entrapment, included the following: Parisi testified that he had purchased drugs from the defendant fifteen or twenty times over a three- or four-year period and that the defendant was known among addicts in the Norwalk area as a seller of narcotics. Agent Carey testified that on the evening of August 5, 1964, before the trip to Bridgeport, the defendant had told him that he (the defendant) and Patrick Stack had already driven to Bridgeport earlier that evening and had purchased narcotics. The defendant himself testified that he had been a user of narcotics for about ten years.

This evidence of predisposition sufficiently supported the verdict of guilty, notwithstanding the defendant's claims and evidence on the issue of entrapment. The court properly refused to set aside the verdict.

There is no error.

In this opinion the other judges concurred.