STATE OF CONNECTICUT *v.* PATRICK MENILLO

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued February 3—decided March 11, 1970

*Theodore I. Koskoff,* with whom was *Michael P. Koskoff,* for the defendant.

*Francis M. McDonald, Jr.,* state's attorney, with whom was *Jeremiah M. Keefe,* assistant state's attorney, for the state.

KING, C. J. On July 24, 1969, the defendant was indicted by a grand jury for the crime of the murder, in the first degree, of Carol T. DelGobbo, by means of poison (apparently applied to her body in the course of committing an abortion upon her) in violation of § 53-9 of the General Statutes (Rev. to 1968).

Under § 53-10, if the accused is found guilty of murder in the first degree, a further hearing is held before the trier, whether court or jury, on the issue of penalty, that is, whether, in the discretion of the trier, after hearing evidence as outlined in the statute, the penalty should be death or life imprisonment. But since the penalty for murder in the first degree could be death, a first-degree murder indictment constitutes an indictment for an offense punishable by death, that is, a capital offense.

Under § 8 of article first of the constitution of Connecticut (1965), it is provided that "[n]o person shall be held to answer for any crime, punishable by death or life imprisonment, unless on a presentment or an indictment of a grand jury". This provision is implemented by § 54-45 of the General Statutes (Rev. to 1968). See also § 54-46. Thus, the defendant here was required to be, as he was, indicted by a grand jury before he could be held to answer on a trial for the crime of murder in the first degree.

After the grand jury had returned the first-degree murder indictment, the defendant made an application to be admitted to bail, which, after hearing before the Superior Court, was denied. The defendant made an application to the Supreme Court for a review of the order denying bail under Practice Book § 694, which authorizes the Supreme Court, "on written motion for review stating the grounds for the relief sought, . . . [to] modify or vacate any order denying or fixing the amount of bail". See also General Statutes (Rev. to 1968) § 54-63g.

At the hearing in the Superior Court, the state claimed that, since the grand jury had indicted the defendant for first-degree murder, which is a crime for which the punishment could be death, he was not

entitled to bail by virtue of § 54-53 of the General Statutes (Rev. to 1968), which provides that "[e]ach person detained in jail for arraignment, sentencing or trial for an offense not punishable by death shall be entitled to bail and shall be released from jail upon entering into a recognizance, with sufficient surety . . . for his appearance before the court having cognizance of the offense". This statute, which appears in substantially the same form as § 97 on page 171 of the Revision of 1821, makes it clear that for a century and a half, in all noncapital cases, an accused has been entitled to preconviction release on bail in a reasonable amount.

The defendant claimed (1) that § 54-53 did not deny bail in all capital cases if properly construed in the light of the provision in § 8 of article first of the constitution of Connecticut (1965) providing that "[i]n all criminal prosecutions, the accused shall have a right . . . to be released on bail upon sufficient security, except in capital offenses, where the proof is evident or the presumption great" and (2) that, if § 54-53 could be properly construed as denying bail in capital cases other than those in which "the proof is evident or the presumption great", it was, to the extent of that denial, unconstitutional as contrary to the above-quoted bail provision of § 8 of article first of the Connecticut constitution.

The court overruled both contentions of the defendant, in effect holding that bail was not permissible in a capital case. In so holding, the court followed the traditional practice in Connecticut, but one which we are now constrained to hold is erroneous. Parenthetically, it may be noted that this is the first time that a claim for bail in a capital case has been made, to our knowledge, in a Connecticut court.

On the bail hearing in the Superior Court, the state steadfastly refused to produce, and did not produce, any evidence tending to show either that "the proof . . . [was] evident" of the defendant's guilt of first-degree murder or that "the presumption [was] great". A claim of the defendant that the state had the burden of proving that he was within the constitutional exception disentitling him to bail was also overruled.

Although the defendant was permitted to offer informal evidence, such as letters as to his good character, it is clear that the court held that as matter of law the defendant, having been indicted for first-degree murder, was not entitled to bail.

The order of the Superior Court denying bail on that ground, under the circumstances of this case as hereinafter discussed, was erroneous, and the application for bail must be remanded in order that there be a new hearing to determine whether the defendant in this case falls within the constitutional exception denying bail in a capital case "where the proof is evident or the presumption great".

While in a technical sense this is dispositive of the matter, in fairness to the trial court, the state and the defendant, we think it practically necessary that consideration be given to two more matters certain to arise on the rehearing. One of these matters is the amount of evidence required to bring an accused within the exception disentitling him to bail, and the other is the question of the burden of adducing such evidence and the risk of nonpersuasion on the issue of a right to bail in this capital case.

(a)

The constitution is so worded as to create an exception which itself is in the disjunctive, that is,

the acccused, even though under indictment for first-degree murder, is entitled to bail except when "[1] the proof is evident or [2] the presumption great".

The fundamental purpose of bail is to ensure the presence of an accused throughout all proceedings, including final judgment. If an accused were kept locked up in jail from the time of his arrest, there would be no question as to his availability at all times. But the bail provision of § 8 of article first of our constitution makes clear that it was intended that in all cases, even capital cases not falling within the exception, bail in a reasonable amount should be ordered. This is reinforced by a further provision in the same section of our constitution prohibiting a requirement of "excessive bail", which thus prevents a court from fixing bail in an unreasonably high amount so as to accomplish indirectly what it could not accomplish directly, that is, denying the right to bail. But a reasonable amount is not necessarily an amount within the power of an accused to raise. It is an amount which is reasonable under all the circumstances relevant to the likelihood that the accused will flee the jurisdiction or otherwise avoid being present for trial. See 2 Swift, Digest, p. 395.

It must not be overlooked that we are concerned here only with preconviction bail. We are not at all concerned with postconviction bail and a stay of execution of sentence during the pendency of an appeal. Such bail is entirely disassociated from the preconviction presumption of innocence, is not authorized by any constitutional requirement but only under § 54-63f of the General Statutes (Rev. to 1968), and should be granted with great caution, as pointed out in cases such as *State* v. *Vaughan*, 71 Conn. 457, 460, 42 A. 640.

It is difficult to state the proper rule or test as to when "the proof is evident or the presumption great", but we think it has probably been as well expressed as anywhere in *State* v. *Konigsberg,* 33 N.J. 367, 377, 164 A.2d 740, where it was said that "bail should be denied [in a capital case] when the circumstances disclosed indicate a fair likelihood that the defendant is in danger of a jury verdict of first degree murder." This rule was reaffirmed in *State* v. *Obstein,* 52 N.J. 516, 522, 247 A.2d 5. Of course the foregoing rule, like any other objective rule, is open to criticism in that the actual likelihood that the defendant will abscond, which is the material question on any bail hearing, depends on his subjective opinion as to his likelihood of conviction rather than on any objective test of his actual danger of conviction. The phraseology of the constitution, however, seems to call for an objective test, and, unless and until some better test can be evolved, we think the above-quoted test should be followed.

(b)

The most difficult question remains. And that is, in a postindictment, preconviction application for bail in a capital case, where does the burden of proof lie to bring the accused within the constitutional exception to the right to bail, that is, to prove that "the proof [of guilt of murder in the first degree] is evident or the presumption great". We have already held that the court below was, in this case, in error in deciding, in accordance with the claims of the state, that the grand jury's first-degree murder indictment was conclusive proof that the defendant was within the constitutional exception disentitling him to bail and in its further holding,

also in accord with a claim of the state, that as matter of law bail was not permissible in any capital case.

In another unrelated application for bail in the capital case of *State* v. *Carter,* 159 Conn. 285, 287, 268 A.2d 677, argued in this court on the same day and decided this day in a separate opinion, the state made a secondary or alternative claim that, if bail was permissible after a first-degree murder indictment, the indictment itself is sufficient to make out a prima facie case that the proof is evident or the presumption great and that the burden of producing substantial countervailing evidence that the accused is not within the exception is on him, although when that limited burden of producing evidence has been satisfied, the overall risk of nonpersuasion on the issue that the accused falls within the constitutional exception disentitling him to bail remains on the state. This is substantially our rule as to the so-called "defenses" of insanity, as outlined in cases such as *State* v. *Conte,* 157 Conn. 209, 212, 251 A.2d 81, and of entrapment, as outlined in cases such as *State* v. *Whitney,* 157 Conn. 133, 135, 249 A.2d 238.

Although there is a rather surprising uniformity in the wording of the constitutional provisions in the various states as to the right to bail in a capital case, the determination of what, if any, evidential weight should be given in a bail hearing to the single fact of a grand jury indictment for first-degree murder has produced a contrariety of decision.

Cases decided up until about 1912 covering the general right of an accused to bail in a capital case are collected in an annotation in 39 L.R.A. (N.S.) 752–785. In an annotation in 89 A.L.R.2d 355 is a relatively recent (1963) collection of cases on the narrower question of the burden of proof, where

bail is sought before judgment but after indictment in a capital case, of showing whether the proof is evident or the presumption great.

A few of the older cases hold that the indictment furnishes a conclusive presumption that the proof is evident or the presumption great. See note, 89 A.L.R.2d 357. This is the rule advanced by the state and that which it induced the trial court to adopt in the instant case.

Other cases deny any evidential weight to the fact of indictment and hold that the right to bail exists in all cases except certain capital cases and that the burden is on the state to show that the accused falls within the exception to the right to bail in those capital cases. The decisions in these cases are based on two grounds. The first ground is that the presumption of innocence requires the result; and the second ground is that, since the constitutional provision entitles an accused to bail in all cases not within the exception, the burden of proof is on the state to bring the accused within that exception. Cases of this type may be found in the annotation in 89 A.L.R.2d at page 358 § 3. This, of course, is the rule contended for by the defendant.

A third line of cases holds that, since the accused is entitled to bail only on application, and when he makes such an application he is attempting to change the status quo, the burden of proof is on him to show that the proof of his guilt of murder in the first degree is not evident or the presumption thereof is not great. Cases of this type may be found in the annotation in 89 A.L.R.2d at page 362 § 4.

We think that these rules oversimplify the problem in this particular case in that they do not give sufficient consideration to the particular proce-

dure followed in a given jurisdiction in the conduct of a constitutional grand jury. Indeed the importance of the applicable grand jury procedure is recognized in the recent case of *Taglianetti* v. *Fontaine,* 105 R.I. 596, 253 A.2d 609, which followed *State* v. *Konigsberg,* 33 N.J. 367, 373, 164 A.2d 740. It is apparent that in a determination of what, if any, evidential effect should be given to the fact of a first-degree murder indictment, the procedure governing the conduct of the grand jury in the particular jurisdiction (and the procedure in many respects is not uniform throughout the United States) must be carefully considered.

We turn now to the Connecticut grand jury procedure. In the first place, it must be borne in mind that in the present case a grand jury was convened pursuant to the constitutional mandate prohibiting the trial of any person for "any crime, punishable by death or life imprisonment, unless on a presentment or an indictment of a grand jury". In other words, this was not the general, investigatory grand jury known to the common law which could inquire into crimes in general and which had functions substantially the same as our modern so-called "one-man grand jury" authorized by § 54-47 of the General Statutes (Rev. to 1968). See, for instance, cases such as *State* v. *Kemp,* 126 Conn. 60, 66, 71, 9 A.2d 63.

The grand jury in the instant case was what, for convenience, will be termed a constitutional grand jury. Its essential mode of operation was outlined in *Lung's Case,* 1 Conn. 428, and in certain details in General Statutes § 54-45 (Rev. to 1968). The state's attorney lays before the court a bill of indictment for murder, specifying whether in the first or second degree; the court orders a grand jury to be summoned to consider it; the state's attorney sub-

mits a list of witnesses, but neither he nor any counsel for the accused is in the grand jury room; the grand jury orders summoned the witnesses on the list together with any other witnesses it finds desirable to interrogate, and these witnesses are sworn to speak the truth in accordance with their oath; and failure to adhere to strict rules of evidence is not fatal to the validity of the grand jury's action on the indictment, although in its charge to the grand jury, the court instructs them to avoid admitting inadmissible evidence.[1]  The grand jury proceedings, with certain exceptions not here involved, are conducted in secret. *State* v. *Coffee,* 56 Conn. 399, 410, 16 A. 151.  While the accused is not, as a matter of right, entitled to be present within the grand jury room, in practice, if he is in custody within the state, or his whereabouts are known to the state and he is readily available, he is allowed the privilege of being present in the grand jury room during the taking of evidence by the grand jury although not during their deliberations. *State* v. *Fasset,* 16 Conn. 457, 469.  The requirement of secrecy is embodied in the oath for members of a constitutional grand jury as set forth in § 1-25 of the General Statutes (Rev. to 1966).  Since a constitutional grand jury does not determine guilt or innocence but merely determines whether there is probable cause to justify putting the accused on trial for murder, the accused, although allowed to ask proper questions of the witnesses before the grand jury, is not allowed to testify or to introduce evidence tending to prove his innocence except insofar

---

[1] Under usual Connecticut practice, at least one of the grand jurors is a member of the bar, so that the exclusion of inadmissible evidence may well be achieved.  See cases such as *State* v. *Davies,* 146 Conn. 137, 139, 148 A.2d 251, cert. denied, 360 U.S. 921, 79 S. Ct. 1441, 3 L. Ed. 2d 1537.

as his questioning of the state's witnesses may disclose the weakness of the state's case. See *State* v. *Hamlin,* 47 Conn. 95, 104.

The basic purpose of our constitutional requirement of indictment by a grand jury is to interpose, between the state and one accused of a crime for which the punishment may be death or life imprisonment, a body of eighteen disinterested persons, twelve of whom, under § 54-45 of the General Statutes (Rev. to 1968), must agree upon an indictment, to determine whether the state has shown probable cause for subjecting the accused to the expense, embarrassment and risk of such a trial. *Kennedy* v. *Walker,* 135 Conn. 262, 270, 63 A.2d 589, aff'd, 337 U.S. 901, 69 S. Ct. 1046, 93 L. Ed. 1715, rehearing denied, 337 U.S. 934, 69 S. Ct. 1493, 93 L. Ed. 1740. These settled principles as to constitutional grand jury procedure in Connecticut were recently reiterated and explained in *State* v. *Stallings,* 154 Conn. 272, 279, 224 A.2d 718. See also *State* v. *Gyuro,* 156 Conn. 391, 393, 242 A.2d 734, cert. denied, 393 U.S. 937, 89 S. Ct. 301, 21 L. Ed. 2d 274. It is obvious that in Connecticut the fact of indictment by the grand jury for murder in the first degree is some evidence that there is probable cause to believe that the accused is in danger of conviction of that crime. This is especially so since in Connecticut the state's attorney must lay before the constitutional grand jury an indictment specifying whether the crime charged is murder in the first or second degree. General Statutes (Rev. to 1968) § 53-9; *McBrien* v. *Warden,* 153 Conn. 320, 328, 216 A.2d 432. If the grand jury fails to find probable cause for murder in the first degree, it would fail to endorse "a true bill" on a first-degree murder indictment. If it felt that there was probable cause for murder in the

second degree, it would so report to the court, asking for an indictment charging murder in the second degree. If it felt that there was not probable cause for murder in the second degree, it would fail to find a true bill if presented with an indictment charging murder in the second degree and thus leave it to the state's attorney, if he chose, to proceed by information on a charge of manslaughter. A constitutional grand jury is concerned solely with a charge of murder in the first or second degree. It does not act on a charge of manslaughter. *McBrien* v. *Warden,* supra, 325. And of course in this particular case, as in any hearing on the constitutional right to bail, the concern is solely with a capital crime, since the unqualified right to reasonable bail is given in all other criminal cases.

Under the New Jersey practice, as outlined in *State* v. *Konigsberg,* 33 N.J. 367, 374, 164 A.2d 740, the state's attorney "usually . . . gives the only legal advice" and "generally directs the entire proceeding" although it is not clear whether he is actually within the grand jury room during its hearings or deliberations. In Connecticut, the state's attorney is not present, and in this case was not present, in the grand jury room. Secondly, while the state's attorney naturally supplies the grand jury with a list of witnesses who he believes will testify in support of the indictment, the grand jury may determine from the testimony that other witnesses should be examined and may cause them to be called. Thus, the state's attorney cannot restrict the grand jury to witnesses on his own list. Thirdly, under our practice the grand jury must find a true bill, if at all, on either a first- or second-degree murder indictment. It cannot, as in New Jersey, merely find murder of some sort and leave the question of the

degree to be determined by the petit jury on the trial. Fourthly, and probably of most importance of all, is our usage of permitting the accused, contrary to the New Jersey and Rhode Island procedure, to be in the grand jury room during the interrogation of witnesses by the grand jury and with the right himself to propound reasonable questions to the witnesses. It is easy to see how, especially in cases where the police have apprehended the wrong person and a simple question of identity is involved, an accused, by a few questions to the state's witnesses, might so weaken the state's case as to induce the grand jury to fail to return a first-degree murder indictment. And of course as far as the constitutional right to bail is concerned, this would be sufficient, since an indictment for second-degree murder is not an indictment for a crime punishable by death.

For these reasons, under our usual Connecticut grand jury procedure, we think that there is little reason for rejecting the grand jury's indictment as having no evidential value on the issue of fact at the bail hearing. See, for instance, *In re Steigler,* 3 Del. Rptr. 379, 250 A.2d 379. On the other hand, the indictment should not, of course, be given conclusive effect which would lead to the same result as the trial court reached here, that is, that bail could never be granted in a capital case after indictment. In short, we think that there is much force in the state's alternative claim, as hereinbefore outlined, as to the prima facie evidential force of the indictment where the usual Connecticut grand jury procedure is followed. But for the reasons hereinafter given we need not, and do not, reach or pass on that claim except to the extent of holding that it is inapplicable on the facts of this particular case.

This is because it appears in the typewritten transcript that the state's attorney made a motion to the court that the defendant not be permitted in the grand jury room to hear and question the state's witnesses, on the ground that witnesses to be called before the grand jury had been threatened. As a consequence of the granting of the motion the defendant was not permitted in the grand jury room. This did not invalidate the grand jury proceedings, although it was a departure from the usual Connecticut practice. *State* v. *Wolcott,* 21 Conn. 272, 279; *State* v. *Hamlin,* 47 Conn. 95, 104. But the question now arises as to what, if any, effect on the evidential force of the fact of the grand jury indictment for murder in the first degree, as bearing on the strength of the state's case against the accused, results from the state's deliberate and planned exclusion of the accused from the grand jury proceedings. Of course if the accused is not in custody within the jurisdiction or his whereabouts are unknown and not readily ascertainable, he cannot forestall the grand jury proceedings by his absence, and that is an important reason why he has not an absolute right to be present in the grand jury room. But where he is in custody within the state or his whereabouts are either known to the state or readily ascertainable, we think that, in the absence of good cause or reason to the contrary, he should be given the usual opportunity, although of course he cannot be compelled, to be present in the grand jury room during the examination of the state's witnesses against him.

Since the grand jury proceedings are secret, the accused, unless permitted to listen to the state's witnesses before the grand jury, would not know what the state's evidence was which he would be called

upon to meet in the bail hearing. This is entirely different from the practice of furnishing the accused with a transcript of the evidence before the grand jury as appears to be the current procedure in Nevada. *Serrano* v. *State,* 83 Nev. 324, 325, 429 P.2d 831.

Indeed, it would border on the absurd to hold that the state, after its deliberate and planned exclusion of an accused from the privilege ordinarily accorded him under our practice of being in the grand jury room, could still force upon him in a bail hearing, the burden of producing evidence (to say nothing of the burden of the risk of nonpersuasion) that the unheard and unknown evidence adduced against him before the grand jury was insufficient to disentitle him to bail. See *State* v. *Konigsberg,* supra; *Ford* v. *Dilley,* 174 Ia. 243, 270, 156 N.W. 513. We find little merit in the state's claim that under modern discovery procedures, an accused is able to learn about the testimony before the grand jury even without being personally present. In this connection the state failed to specify what these modern discovery procedures were.

General Statutes § 54-47 appears to be restricted to a general investigatory grand jury and in any event authorizes access by an accused only to his own testimony which, under Connecticut procedure, is not permitted or given in the case of a constitutional grand jury. Subsection (a) of No. 680 of the Public Acts of 1969 provides that in "any criminal prosecution, after a witness called by the prosecution has testified on direct examination, the court shall on motion of the defendant order the prosecution to produce any statement oral or written of the witness in the possession of the prosecution which relates to the subject matter as

to which the witness has testified, and the court shall order said statement to be delivered directly to the defendant for his examination and use." If the state had this statute in mind, it does not seem to afford an equivalent substitute for the accused's presence in the grand jury room.

In the first place, it is at least highly questionable whether the statute applies at all to a bail hearing. Such a hearing would not ordinarily be considered to be a "criminal prosecution".

Second, under the state's prima facie theory, the state would have no obligation to produce any testimony in the first instance at the bail hearing, and there would be no "witness called by the prosecution" who had testified "on direct examination" until the defendant had produced his evidence that he was entitled to reasonable bail.

Third, since the state's attorney himself is not in the grand jury room and the proceedings before a constitutional grand jury are not stenographically transcribed, there would be no way in which the testimony of a witness before the grand jury would be "in the possesssion of the prosecution" within the meaning of the 1969 Act.

Furthermore, even though an accused is not allowed to introduce evidence in his favor, or himself to testify in his favor, before the grand jury, he is allowed reasonably to question witnesses produced by the state, and we do not see how we can say that such questions might not so weaken the state's case as to influence the grand jury to refuse to find a true bill of murder in the first degree. Certainly we know of no discovery procedure which would be an effective substitute for this valuable privilege.

In the instant case, under the procedure which the state deliberately chose to follow, we do not feel

that we can attach evidential weight to the grand jury's indictment sufficient to make out even a prima facie case under the constitutional bail provision applicable to a capital case. In other words, on the remand in this case the state must go forward at the bail hearing and offer evidence from which, together with any evidence offered by the accused, the court can find that the proof is evident or the presumption great that the defendant committed the crime of murder in the first degree.[2]

Since this is a case of first impression in Connecticut, we restrict this opinion to the precise case before us. We do not pass upon the question of the burden of proof, either of going forward with evidence or of the risk of nonpersuasion, as to whether an accused would fall within the exception to the granting of bail in a capital case if (1) he is present within the grand jury room, or (2) if he chooses, with the advice of counsel, not to be present in the grand jury room, or (3) if he is not within the jurisdiction or otherwise readily available to be accorded the opportunity to go before the grand jury. We

---

[2] One claim made by the defendant both in the Superior Court and in this court was that, notwithstanding the grand jury indictment of first-degree murder, as matter of law he could not be convicted of first-degree murder and thus was entitled to bail since the case would not be a capital case. This claim is based on the theory that the homicide occurred in the attempt to commit an abortion and thus as a matter of law could not be murder in the first degree under our statute. Since neither the state nor the defendant offered evidence relevant to this issue, facts are lacking for our definitive determination of the question, although it may be raised at the rehearing on the defendant's right to reasonable bail. In this connection, see 2 Swift, Digest, p. 269, written before murder in Connecticut was divided into two degrees, and cases such as *State* v. *Reid*, 146 Conn. 227, 230, 149 A.2d 698, and *State* v. *Dowd*, 19 Conn. 388, 392, both decided after murder had been divided into two degrees. See also 40 Am. Jur. 2d, Homicide, § 534; Clark, Criminal Law (2d Ed.) §§ 71 and 72, p. 192.

confine ourselves to the situation actually before us in this case where the accused was available and was deliberately excluded from the grand jury room throughout the interrogation of witnesses.

It perhaps should be pointed out that the bail hearing is not a determination of guilt or innocence but rather a determination of the preliminary issue of the right to reasonable bail. Unless the accused insists otherwise, it may well be conducted somewhat informally, as upon affidavits. If this cannot be agreed upon, then the accused has the right of cross-examination of the state's witnesses at the bail hearing as well as the right to introduce evidence in his favor. But the court should confine the evidence to the issue involved and not allow an accused to transform the hearing into an unorthodox discovery procedure for forcing the state to produce its case. *State* v. *Obstein,* 52 N.J. 516, 523, 247 A.2d 5.

It is also important that the trial court avoid even the appearance of a determination of ultimate guilt or innocence, lest the rights of the state or the accused be prejudiced in the subsequent trial on the merits. *In re Steigler,* 3 Del. Rptr. 379, 250 A.2d 379. Unless the accused objects, the safest course would probably be to hold the bail hearing in camera. *State* v. *Obstein,* supra, 522. Experience with applications for bail in capital cases may indicate the desirability of regulating the procedure in hearings on such applications by appropriate rules of court.

There is error, the order denying bail is set aside and the Superior Court is directed to grant a new hearing on the defendant's motion for bail to be conducted in conformity with this opinion.

In this opinion ALCORN, HOUSE and RYAN, Js., concurred.

THIM, J. (concurring). I concur in the result and with much of the reasoning employed by my colleagues. Nevertheless, I feel that too much emphasis is placed upon the absence of the defendant in this case from the grand jury proceedings. The heavy reliance on such a test strongly implies that, in cases where an accused is present during grand jury proceedings, the indictment would furnish prima facie evidence of likelihood of conviction and relieve the state from its burden of going forward with the evidence at the bail hearing.

The result in the instant case ought not to rest on whether the defendant is permitted to attend the proceedings and thereby to acquire knowledge of the state's case. Rather, the result reached should be dictated by a holding that an indictment in this state cannot amount to prima facie evidence of likelihood of conviction, irrespective of attendance by the accused at the grand jury proceedings. This is so for two reasons. First, the grand jury is instructed not to concern itself with guilt or innocence; its sole function is to determine whether there should be a trial. Consequently, a true bill could be returned even in a case where a majority of the grand jury felt there was little chance of conviction if sufficient jurors concluded that the evidence still warranted a trial, since the grand jury is instructed to ignore the question of guilt. Second, even if the accused is present during the proceedings, he is denied counsel and forbidden to introduce any evidence of his own. Thus, the indictment procedure in Connecticut, even when the accused is present, does not provide adequate safeguards and opportunity for him to exculpate himself so as fairly to produce a finding of likelihood of conviction. The conclusion is inescapable that an indictment cannot properly be ac-

corded any significance above that due the very limited determination that there should be a trial. It therefore would be of little evidentiary value in a bail hearing at which the quite separate question of likelihood of conviction must be decided. After all, provision for such a hearing admits, of necessity, that even though an accused is indicted he is not necessarily likely to be convicted. For these reasons this court should hold unequivocally that an indictment can never be prima facie evidence of likelihood of conviction and that the state should always bear both the burden of proof and of going forward with the evidence at the bail hearing.

An incidental benefit of such a holding would be to place the state in control of the scope of the bail hearing. Since it would have both burdens, it could choose how much of its case to put on at the hearing (with the risk, of course, that it might fail to sustain its burden on the issue of bail), and the accused would be limited to a rebuttal of what the state chose to introduce.