## THE STATE *vs.* PETER COFFEE.

New Haven Co., June T., 1888. PARK, C. J., CARPENTER, PARDEE, LOOMIS and BEARDSLEY, Js.

It does not seem to be the policy of the law that testimony before a grand jury should be kept secret where public justice or the rights of parties require that it should be made known.

However this may be, yet voluntary statements made by an accused person in the grand jury room, where he is allowed to be present to cross-examine the witnesses against him, are not protected, and may be testified to by the grand jurors.

Where a person afterwards indicted for murder was summoned as a witness before a coroner upon a general inquiry as to the facts attending the homicide and there told that he could not be compelled to make any statement, but might do so if he chose, and was then questioned by the coroner and made answer to his inquiries, it was held that his declarations then made were admissible against him on his trial upon the indictment.

The judge in his charge said to the jury:—"The evidence connecting the prisoner with this crime is circumstantial." It was a part of the defense that there was no crime and that the death was accidental.

State v. Coffee.

Held that it could not be supposed that the jury were misled by this casual expression into the belief that the judge believed that the evidence proved a crime.

The judge also told the jury that the evidence was not equivalent to that of two witnesses and therefore was not sufficient to warrant a conviction of murder in the first degree. Held that it could not be supposed that the jury were misled by this instruction into the belief that in the opinion of the court they ought to convict of murder in the second degree.

A declaration made by a person while putting an article in a certain place, as to where and of whom he got it the day before, is not admissible as part of the res gesta, being merely a statement of a past transaction.

[Argued June 6th—decided July 7th, 1888.]

INDICTMENT for murder, in the Superior Court in New Haven County.

The indictment charged the prisoner with the murder of William I. Way, at Branford in New Haven County, on the 9th day of May, 1887. The prisoner pleaded not guilty, and the case was tried to the jury before *Torrance, J.*

On the trial the State called as a witness Edwin A. Lum, who testified that he was a member of the grand jury that indicted Coffee and that Coffee was present before the grand jury. The witness was then asked to state what Coffee said before the grand jury in reference to the death of Way. The counsel for the accused then requested that the witness be asked whether, if Coffee did commence to say anything, he was checked and not permitted to go on, which claim was objected to by the State, and overruled by the court, the counsel for the accused excepting. The question asked of the witness was then objected to by the counsel for the accused on the ground that the testimony of a grand juror as to what took place in the grand jury room was not admissible; which objection was overruled by the court, the counsel for the accused excepting. The witness then, in answer to the question, testified that "Coffee said that he knew all about it. That if they wanted to put his head in the rope he would make a full disclosure of the case. That he wasn't alone in the crime. He further said he was with him at the time of his death, or five minutes before it. I am not sure which. It was one or the other.

Some witness had testified that seemed to disturb him. When he said these things to me he was under excitement. He seemed to be very much agitated, and thought the tendency of the witness was to criminate him in particular." The witness further testified that at the time Coffee made this statement he sat within arm's length of him and added:—"He sat nearly at the head of the table and I sat at his left, and at intervals when any witness was being examined he was quite inclined to communicate with me. I felt a hesitancy about allowing him. I thought the jurors would think it not in good taste to be conversing with the criminal." It further appeared from the cross-examination of this witness that Coffee was advised when he was making some statement, not to say anything more, inasmuch as he had no counsel there in his behalf.

The State also called as a witness Henry H. Steadman, who testified that he was a member of the grand jury that indicted Coffee. This witness testified in answer to the question,—"Now, if Coffee made any statement when he was before the grand jury, will you state what it was, as you remember it?"—that Coffee said that he and Mason were the last persons that saw him alive, and they saw him not more than two minutes before his death. He also said that Mason had got to help him out of this. I don't recall anything more that he said. He made other remarks before the grand jury that I don't recollect." The counsel for the defendant objected to this evidence also, on the same ground as before. The court overruled the objection and admitted the evidence and the defendant excepted.

The State also called as a witness Benjamin B. Bunnell, who testified that he was a member of the grand jury that presented the indictment against Coffee. The witness was then asked this question,—"I want to call your attention to anything that Coffee said before the grand jury, in reference to his knowledge or that of Mason as to the death of Way. Will you state what you remember in regard to it?" The counsel for the accused objected to this question on the same ground, but the court admitted it. The witness

answered as follows: "When we were sitting there, I think we were waiting for a witness to come in, and Coffee spoke up and said 'Mason has got to help me out of this or else' —something. He said he would do something, but I can't recollect what it was. He also stated that he and Mason were the last two that saw Charlie Way alive, and I think he said a few minutes or two minutes, I wont be positive which, before he died, and some one of the jury spoke up and said to him, 'We didn't call you in here as a witness; you was merely called in here to hear the other witnesses and ask them any questions you saw fit;' and then he didn't say any more at the time." The court found that all of the statements of Coffee testified to by the three witnesses were voluntarily made.

The State also called as a witness Eli Mix, the coroner of New Haven County, who testified that, after the death of Way and prior to the indictment of Coffee by the grand jury, Coffee appeared before him in answer to a subpœna calling him to his office; that thereupon he made certain voluntary statements under oath in answer to questions put by the coroner, after the latter had cautioned him that he need not say anything unless he chose; that he couldn't compel him to make any statement, but that if he desired he might make any statement; that he, the coroner, would take it, and that he need not say anything unless he had a mind to. The counsel for the accused objected to Mix's testimony as to these statements, but the court overruled the objection and admitted the evidence; to which the counsel for the accused excepted.

The accused called as a witness Samuel H. Clark, who testified that he was a conductor on the New York, New Haven & Hartford Railroad; that on the morning after Way was killed he was in the conductor's room in the New Haven station, between 7:30 and 8 o'clock, when he saw Mason take a watch out of his pocket and put it in his conductor's box, which watch the witness identified on the trial. The counsel for the accused then inquired of the witness whether Mason at that time told the witness how he came by the watch. This inquiry was objected to by the State,

and excluded by the court, the counsel for the accused excepting.

The accused also called as a witness Elmer A. Bacon, who testified that he was a baggage-master on the same road between New Haven and New London; that he was on the train that left New Haven at 8:08 A. M., May 10th, 1887, which was Mason's train, and that shortly after the train left New Haven he saw a watch lying in Mason's conductor's box, which watch the witness identified on the trial. The counsel for the accused then inquired of the witness what Mason said at that time in reference to the watch and as to how he came by it. This inquiry was objected to by the State, and excluded by the court, the counsel for the accused excepting. Mason had previously testified as to how he came by the watch and what he did with it.

The accused also called as a witness Robert H. Norton, who testified that he knew Way very well; that he was at Stony Creek a few days before Way's death, when he had a conversation with him. The counsel for the accused then offered to prove by this witness that Way at that time expressed alarm at some of the Swedes who were around Stony Creek, and stated that for that reason he kept his door locked. This evidence was objected to by the State and excluded by the court, the counsel for the accused excepting.

The accused also called as a witness Charles C. Hill, and offered to prove by him that one John Johnson, a Swede, who lived across the road from the Stony Creek station, went away from Stony Creek immediately after Way was killed, no other evidence being offered showing or tending to show that Way was killed by the Swede or that the Swede was in any way connected with the killing of Way. This inquiry was objected to by the State, whereupon the court inquired of the counsel for the accused if he proposed to show that Way was murdered by the Swede; to which the counsel said—" We propose to show that he went away immediately after this affair happened, left town

suddenly," and said nothing more. The question was then excluded by the court, the accused excepting.

The jury returned a verdict of "guilty of murder in the second degree," and the prisoner was sentenced to the state prison for life. From this judgment the prisoner appealed, on the ground of error in the rulings of the court and in the charge to the jury. The points excepted to in the charge are sufficiently stated in the opinion.

*L. N. Blydenburgh* and *S. C. Loomis*, for the appellant.

1. The court erred in admitting the testimony of Lum, Stedman and Bunnell, members of the grand jury, as to certain matters which took place in the grand jury room. In Connecticut the practice has been to allow the accused to be present with the grand jury, to ask witnesses any questions he may wish. When he is present he is part of the machinery of the grand jury. He cannot testify to what takes place there, nor may the grand jurors nor any other person. The grand jury is sworn to secrecy. "The secrets of the cause, your own, and your fellows, you will duly observe and keep." Gen. Stat., § 3264. A clerk attending on a grand jury was not allowed to reveal what was given in evidence before the inquest. 2 Stark Ev., 232; Viner Abr., *Evidence,* 38. In *Commonwealth* v. *Tilden,* Feb. 1823, Norfolk County, Mass., it was ruled by PUTNAM, J., that the attorney for the commonwealth could not be called upon to testify to what passed in the grand jury's room. (Cited in 2 Stark. Ev., 232.) To the same effect see 1 Chitty Crim. Law, 317; Viner Abr., *Evidence,* 20, H; Clayton, 84, pl. 14; *McLellan* v. *Richardson,* 13 Maine, 86, *Beam* v. *Link,* 27 Misso., 262. In Connecticut it has always been the policy of the law to keep secret what occurred in the grand jury room; the only exception being in cases of perjury, where it became absolutely necessary that the grand jurors should testify, for otherwise persons might swear falsely before them with impunity, there being no other possible evidence to show wherein they had perjured themselves. The oath which the grand jury take is differ-

ent in this state, from what it is in many of the others. In those states the oath is "*the State's secrets,* your own, and your fellows', you will observe and keep." In Massachusetts it is "*the Commonwealth's secrets,* your own and your fellows', you will keep." And in England, the oath is "*the Queen's counsel,* your fellows', and your own you shall keep secret." So that it is argued that if the State, or the Commonwealth, desires the testimony, and puts the inquiry, it absolves the grand juror of his oath and releases him so that he may relate what took place in the grand jury room. But in this state the oath is—"*the secrets of the cause,* your own, and your fellows', you will duly observe and keep." In the case of *State* v. *Fasset,* 16 Conn., 467, C. J., WILLIAMS, says: "It is the peculiar policy of the law, in the furtherance of justice, that this preliminary inquiry should be conducted in secret. The oath, therefore, which grand jurors take, is entirely different from that of petit jurors, especially in criminal cases. In the latter there is no allusion to the secrets of the cause; and in civil causes they are to speak nothing to any one, and to keep secret their verdict until they deliver it up in court. The grand jury swear 'the secrets of the cause, their own and their fellows', they will observe and keep.' 'The secrets of the cause' must relate to the persons accused, the witnesses, who they are and what they testified. 'Their own and their fellows' secrets' must refer to the deliberations and the votes of the grand jurors themselves. And it was early decided that a grand juror should not be allowed to swear what was given in evidence before the grand jury, because he is sworn not to reveal the secrets of his companions. Clayt., 84; 15 Vin. Abr., 20, tit. Evid. H. 4. An exception to this may be found when a witness testifies differently on the trial before the petit jury from what he did before the grand jury; then the grand jury may be called to contradict him on that trial or on his trial for perjury; though this, it is said, has been denied. *Imlay* v. *Rogers,* 2 Halst., 347. In Pennsylvania it has been held that a grand juror may prove who was the prosecutor; but it is because it is

not considered within his oath. 3 Watts, 260. These cases rather tend to establish the general principle than to impair it." This case was approved in *State* v. *Hamlin,* 47 Conn., 115. It is argued that in this case the reason of the secresy fails, because the accused was allowed to be present before the grand jury. But there can be but one rule in this matter, and the same rule must be applied in all cases. The prisoner is not before the grand jury as a matter of right. *State* v. *Hamlin,* 47 Conn., 95. If the statements made by the accused when he is before the grand jury are to be admitted, then the circumstances under which he made them must also be admitted; and it would be the right of the accused to go on the witness stand and give his version of the matter, and, if necessary, relate the whole proceedings that took place in the grand jury room, and he could call every grand juror, if necessary, and also the witnesses who were present. Again, it is an alleged confession which the State seeks to prove by this testimony; and before confessions may be offered in evidence, the court must be satisfied that they were not obtained through threats or induced by promise of reward. If an alleged confession is made while a prisoner is before the grand jury, if this court is to allow such testimony at all, it will become competent for the counsel for the accused to inquire into all the circumstances under which the alleged confession is said to have been made, so as to ascertain whether any threats have been made or any inducements offered.

2. The court erred in admitting the testimony of Mix, the coroner of New Haven County, as to statements made by the defendant under oath, in answer to a subpoena and summons to appear before him as coroner, and when he had so appeared and was being inquired of by the coroner. The statute under which the coroner acted is found in Acts of 1883, p. 299, § 14. "For the purpose of securing evidence, the coroner * * * shall have power * * * to compel the attendance and testimony of witnesses." And he also has power to punish for contempt. The coroner testified on the trial that he told Coffee he needn't say anything unless he

chose; that he could not compel him to make any state-ment, but if he desired to make any he might do so. To this Coffee made no reply. He was then put under oath and question after question put to him. We claim that, having been called there by subpœna, he was not there vol-untarily, and that after the oath was administered and the questions put, he was not to be considered a willing or con-senting witness. He was there an ignorant man without counsel, being summoned to testify in this matter. He is told that he needn't say anything unless he wishes, but if he wished to make a statement he could do so. But he doesn't say anything until he is put under oath and questions put to him. We submit that under those circumstances he was laboring under the belief that he was compelled to answer. In the case of *People* v. *Sharp*, 107 N. York, 427, it was held that " where a person attends before a legislative com-mittee in obedience to its subpœna, and is sworn and examined as a witness, he cannot be deemed a willing or consenting witness, and he does not waive the privilege given by said section by not asserting it before the committee." The law guards the rights of a prisoner too well to allow the slight-est compulsion whatever to be exercised in this matter. 1 Greenl. Ev., § 225 ; *Rex* v. *Green*, 3 Car. & P., 312.

3. The defendant called Samuel H. Clark, who is a con-ductor on the New York, New Haven & Hartford Rail-road, as a witness, who testified that on the morning of May 10th, 1887, the morning after Way's body was found, he was in the conductor's room in the New Haven station, between 7:30 and 8 o'clock, and saw Mason take a watch out of his pocket and put it in his conductor's box, which watch the witness identified on the trial. The counsel for the accused then offered to prove what was said at that time by Mason in relation to this watch and in connection with his putting it into his conductor's box, as part of the *res gestœ* and char-acterizing his act of taking it from Coffee and putting it there, to which evidence the counsel for the state objected and the court excluded it. The defendant also called El-more A. Bacon, who is a baggage-master on the same rail-

road, who testified that he was a brakeman on the train that left New Haven at 8:05 A. M. on May 10th, 1887, the morning after Way's body was found, on which train Mason was conductor, and that shortly after the train left New Haven he saw a watch lying in Mason's conductors' box, which watch the witness identified on the trial. The counsel for the accused then offered to prove what was said at that time by Mason in reference to the watch and in connection with its being in his conductor's box, as part of the *res gestæ* and characterizing his act of taking it from Coffee and putting it there, which was objected to and excluded. This was Coffee's watch and the one which Mason testified on the trial he had taken from Coffee the night before as security for his fare. And if Mason's testimony is true in this respect it is an end of the case. And we claim that it was the very highest evidence that in the day and time of it, the next morning, within less than ten hours after Way was run over, this watch was seen in Mason's conductor's box, and the reason of its being there was then explained. It characterized Mason's act of putting it there as conductor, and we claim it was competent evidence. *Russell* v. *Frisbie*, 19 Conn., 209.

4. The court erred in its charge to the jury. The judge said to them :—" The evidence connecting the prisoner with this crime is circumstantial, but circumstantial evidence may be as convincing as that which is called direct." We claimed on the trial, and claim now, that the state had not proved that there was any crime committed, and that there was no evidence, circumstantial or otherwise, that connected the prisoner with any crime. The court also charged as follows :—" To justify you in finding the accused guilty of murder in the first degree you should find that the killing was done intentionally and deliberately, without provocation or excuse of any kind, and that the accused at the time and just before had formed and was capable of forming and entertaining such a deliberate intent; and this you should be satisfied of beyond a reasonable doubt and by the testimony of at least two credible witnesses, or that which is

equivalent thereto ; and I feel bound to say to you that in the opinion of the court the evidence is not equivalent to the testimony of two witnesses and does not warrant you in finding a verdict of murder in the first degree ; and I believe, gentlemen, I may say that the State does not claim that." Also—" So that under this indictment, gentlemen, there are four possible verdicts which you may render : murder in the first degree, which I have told you I do not think the evidence warrants ; murder in the second degree; manslaughter ; and ' not guilty.' You will indicate in your verdict which of these you find." We claim that the court must submit all questions of fact to the jury, without giving them his opinion thereon. The court said here that in its opinion the evidence was not equivalent to the testimony of *two* witnesses ; and the jury had a right to infer, and did infer from that, that in the opinion of the court the evidence was sufficient to warrant a verdict of murder in the second degree. The court did not intend that the jury should draw such an inference, for it certifies that the verdict was against the evidence, but from the language used it was easy for the jury to have so understood it. The court dictated a verdict of not guilty in the first degree and was silent as to other degrees. It gave the jury good reason to think that in its opinion it was their duty to render a verdict in the second degree. " Instruction by the court to the jury in a criminal case, of a nature to induce the belief that the jury may have been misled to the prejudice of the defendant, is sufficient reason why a new trial should be granted, even though the instructions be not erroneous as abstract legal principles." *State* v. *Grear*, 28 Minn., 426.

5. The verdict was against the evidence.

*T. E. Doolittle* and *E. H. Rogers*, for the State.

CARPENTER, J. On the trial of this case the State offered three members of the grand jury that indicted the prisoner to testify to declarations made by him in their hearing in the grand jury room. To the admission of this

evidence counsel for the prisoner objected, but the court admitted it. This is assigned as one of the reasons of appeal.

The objection is, in effect, that everything which transpired in the jury room is privileged and cannot be divulged. This claim is founded partly on the grand juror's oath, one clause of which is, " the secrets of the cause, your own, and your fellows', you will duly observe and keep." Proceedings before and by the grand jury may be classified as follows : — the taking of testimony, the deliberations, and the voting. In respect to the deliberations we know of no reason why the obligation of secresy should not be perpetual. It is due to the jurors themselves that their views and opinions should never be called in question or made public. In no other way can complete independence and freedom of action be secured. We are aware of no case in which it has been deemed necessary to require any juror to disclose his own or his fellows' action in this regard.

The voting should be regarded as equally sacred, with one possible exception; if a mistake occurs, and a bill is returned as a true bill, when the requisite number did not so vote, on a motion to quash the indictment perhaps in the interest of justice that fact might be shown. To that effect we believe there are some decisions.

Some of the reasons given for keeping the testimony secret are temporary in their nature, and some do not exist under our practice where the prisoner is before the grand jury; nevertheless the oath and the policy of the law have ever regarded the testimony as among the secrets of the grand jury room. Not however inflexibly so. In *State* v. *Fasset*, 16 Conn., 457, the court notices two exceptions— in prosecutions for perjury, and in case witnesses testify differently on the trial. Perhaps it would be proper to say that the oath has this implied qualification, that the testimony is to be kept secret unless a disclosure is required in some legal proceeding. It does not seem that the policy of the law should require it to be kept secret at the expense of justice. And so the weight of authority outside of this

State *v.* Coffee.

state seems to be, that where public justice or the rights of parties require it, the testimony before the grand jury may be shown.

" When the purposes of the secresy are accomplished, it is the better opinion, contrary perhaps to some cases, but maintained in most, that any revelations of the grand jury's doings may be made which justice demands." 1 Bishop's Criminal Procedure, (3d ed.,) § 857. " The answers and other testimony, which are voluntarily given by a witness in any cause or proceeding, civil or criminal,—as before a commissioner in bankruptcy, a committee of the legislature, a committing magistrate, a grand jury, a coroner, a fire inquest, or any court in an ordinary law suit, are, as admissions or confessions, competent evidence against him on any issue in a criminal cause to which they are pertinent." Id. § 1255.

In *State* v. *Wood*, 53 N. Hamp., 484, SARGEANT, C. J., states the weight of authority now to be, " that a grand juror may be compelled to testify when necessary to promote the cause of justice, what the witnesses before the grand jury testify to, either to contradict such witnesses or otherwise."

In *State* v. *Benner*, 64 Maine, 267, the court says:— " But the oath of the grand juror does not prohibit his testifying what was sworn before the grand jury, when the evidence is required for the purposes of public justice or the establishment of private rights * * * So in all cases when necessary for the protection of the rights of parties, whether civil or criminal, grand jurors may be witnesses. Such seems the result of the most carefully considered decisions in this country."

In *Benedict* v. *Hunt*, 43 Ind. 381, it is said that "the oath of grand jurors does not prevent the public, or an individual, from proving by one of the jurors, in a court of justice, what passed before the grand jury."

In *Jones* v. *Turpin*, 6 Heiskell, (Tenn.,) 181, it is said that " when these ends have been accomplished the entire purpose of secresy is effected, and if at a subsequent period it

State v. Coffee.

shall become necessary to the attainment of justice and the vindication of truth and right in a judicial tribunal that the conduct and testimony of prosecutors and witnesses shall be inquired into, there is no reason why it should not be done."

In *Gordon* v. *The Commonwealth*, 92 Penn. St., 216, it is said that "on no sound principle can it be said that a witness who has testified before a grand jury shall be permitted to claim that his evidence was a privileged communication, so that it shall not be shown under the direction of the court, whenever it becomes material in the administration of justice. It is material when the evidence is necessary to protect public or private rights."

We make these quotations, not for the purpose of showing what the law is in this state, but for the purpose of showing the principles which prevail in other jurisdictions. The case of *State* v. *Fasset, supra*, may be regarded as somewhat inconsistent with the broad principles elsewhere enunciated. It is doubtful whether the court intended to go further than the two exceptions there noticed. If now, or if at any time hereafter, the court should adopt the same principles, it would open up a new and interesting field of inquiry—whether in all cases, without reference to the parties, the amount involved, or the character of the case, the court will require the secrets of the jury room to be divulged. And if not, where will the line be drawn? Obviously questions may arise of some nicety and not a little difficulty.

It would seem as though the sentiment of the state has hitherto limited the exceptions to prosecutions for perjury, and to contradicting witnesses. Whether it is wise to go further we will not now undertake to say. It is not probable that many, if any, cases not embraced in one of the two classes named will ever arise. Those two classes will be likely to embrace every possible case in which public interests are involved; and it is difficult to conceive how the rights of parties in civil actions can be made to depend upon the regular and ordinary proceedings of a grand jury. When such a case does arise, then will be the proper time to consider the question to which we have alluded.

The question now before us is of a different character. It is whether the declarations of the prisoner, made to two or three individuals, not as jurors, and forming no part of their proceedings, must be excluded merely because they were made in the grand jury room, and the witnesses who heard them were jurors. No case cited has gone quite so far as this. The declarations sworn to by the witnesses were in no proper sense a part of the secrets of the cause. They relate to the prisoner, it is true, and tend to connect him with the crime; but they were in no wise connected with the investigation. They were not and could not have been properly elicited by the grand jury. They had no right to allow the prisoner to testify, or even to make a statement. His statements were wholly voluntary, and they appear to have been made when the proceedings were at a standstill—probably while waiting for a witness to come in. Suppose that, under such circumstances, he had chosen to make an unqualified confession that he was the murderer. Can it be seriously claimed that evidence of such a confession would have been inadmissible? It was no part of the duty of the grand jury to procure such a confession. In listening to it they stood upon the same footing with any other person who might have happened to hear it, and may with the same propriety testify to it. The statements made in this case do not differ in principle from full confessions. We think there was no error in admitting this evidence.

On the trial the prosecution offered to give in evidence the testimony of the prisoner before the coroner. He was summoned there as a witness. The finding is that " Coffee made certain voluntary statements under oath in answer to questions put by the coroner, after the latter had cautioned Coffee that he need not say anything unless he chose; that he could not compel him to make any statement, but that if he desired he might make any statement; that he, the coroner, would take it, and that he need not say anything unless he had a mind to." His testimony was not a confession, or in the nature of a confession, but was simply a statement of what he did and where he was during the evening on which Way came

to his death. Counsel for the prisoner objected to the admission of this evidence, but the court admitted it. This also is assigned as a reason of appeal. The proceeding by the coroner was under the statute (Gen. Statutes § 2016) which gives him power to compel the attendance and testimony of witnesses by subpœna and capias, and to punish for contempt, etc.

In considering whether this evidence was or was not admissible, two things are to be kept in mind :—first, that it was not a confession by the prisoner, but simply a statement in relation to his own doings and whereabouts on that evening; and, second, that the proceeding was not a judicial examination by a magistrate of a person under arrest for a crime, but was simply the taking of the testimony of a witness who was supposed to have some knowledge concerning the matter under investigation.

The rules and safeguards which the law charitably throws around confessions for the purpose of protecting persons accused of crime from the consequences of their own folly or weakness, can have but a limited application to facts and circumstances which are only important as they consist with or differ from other facts proved or admitted. A person may be induced by hope or fear to confess guilt when he is in fact innocent, hoping thereby to escape some of the consequences of an unfortunate combination of circumstances. In such cases there is an apparent intention to confess a crime ; and sometimes a party will go so far as to concoct a chain of circumstances, all of which is false, in order to make his story appear plausible. But if there is no intention to admit guilt, but only to relate truthfully events as they transpired, there is little or no ground for the operations of hope or fear. If he is really innocent the actual facts will be better for him ordinarily than any story he can devise. If guilty, and he desires to conceal facts, or to make statements which are not true, he does so, not in expectation of favor, or in consequence of threats, but in the hope that he may be able to clear himself by his own devices. In either case there is no danger that the story is induced by fear or

hope, at least such fear or hope as leads to erroneous confessions of guilt. In this case there were no threats to cause fear and no promises to induce hope.

Was the prisoner in such a state of mental excitement caused by terror and apprehension as to render his statements unreliable? There is no evidence of it; no indication that he was not perfectly cool and self-possessed. But if otherwise, that seems to be a matter affecting the weight of the evidence rather than its admissibility.

There can be no pretense that there was any actual compulsion. The prisoner was distinctly informed that he might testify or not as he pleased—that no compulsion would be used. Any intimation that his testimony was not voluntarily and freely given imputes to him a very low degree of intelligence.

Was there legal compulsion? We must remember that this was not a judicial examination of a prisoner in respect to a crime charged against him. Such a proceeding is unknown to our practice. Where it exists it is regulated by statute, which provides such safeguards as are deemed essential.

In this state the salutary principle embodied in the constitution—that no man is bound to criminate himself—has ever been rigidly adhered to. Prior to the statute which allows a party accused of crime to be a witness in his own behalf, he was at liberty to make a statement explanatory of his alleged or apparent connection with the offense. That statement oftentimes appeared in evidence on the trial for or against him. If it did not so appear his counsel rarely failed to use it with good effect, by way of illustration or supposition. If the statement was in the nature of a confession the transaction was carefully scrutinized to see that it was not induced by official promises or threats.

The statute permitting him to testify carefully avoids all compulsion, and if he declines to be a witness that circumstance may not be commented on either by court or counsel. Thus it is that in every stage of the proceeding the law guards with anxious solicitude the rights of parties accused

of crime. We see nothing in the action of the coroner in this case which offends the policy of the law in that regard. The reasoning that would exclude this testimony would with equal propriety exclude the testimony of an accused party who voluntarily takes the stand in his own behalf on the trial.

We do not care to quote extensively from decided cases. The case of *Hendrickson* v. *The People*, 10 N. York, 13, sustains our position. The case of *The People* v. *McMahon*, 15 N. York, 384, is a case which appears to be somewhat inconsistent with it. In those two cases the law on this subject is exhaustively considered. In *Teachout* v. *The People*, 41 N. York, 7, and in *The People* v. *McGloin*, 91 N. York, 241, the same subject was again under consideration, and *Hendrickson* v. *The People* was affirmed, and that now seems to be the settled law of that state. One important test in those cases is the reliability of the statements of the accused. If they appear to be unreliable from any cause, according to those cases, they are to be excluded. We also refer to *Snyder* v. *The State*, 59 Ind., 105, *State* v. *Gilman*, 51 Maine, 206, *Commonwealth* v. *King*, 8 Gray, 501, and *Commonwealth* v. *Bradford*, 126 Mass., 42.

The statement of Mason, the conductor on the train on which it is said that the prisoner went from Stony Creek to Guilford on the night of the homicide, made to Clark, another conductor on the same road, the next morning, in the conductors' room at New Haven, in connection with putting a watch in his ticket box, respecting the person from whom he received it, the time and place when and where, and the purpose for which it was taken, was clearly inadmissible.

So far as it pertained to any act which it could be claimed to explain, it was the act of placing the watch in the box ; but this was an act already testified to and about which there was no question ; and besides this, it was of no importance whatever. The real object of the defendant's counsel was to get in the statement of Mason as having an importance of its own, but it was clearly only a narrative

of a past transaction, and a declaration of that sort can not become a part of a present act.

We are unable to see that there was anything objectionable in the manner of stating to the jury the claims of the parties. The facts referred to were referred to as claims. We think the court did not assume, and was not understood to assume, that any disputed fact was proved; much less did it express an opinion as to the weight of evidence. Taking the charge as a whole, we think the case was fairly submitted to the jury.

'Nor is the reference by the court to circumstantial evidence objectionable, when taken in connection with other parts of the charge and the claims of the parties. ' It is insisted that it was a disputed point whether any crime was committed. But that was necessarily involved in the question as to the guilt or innocence of the accused, and that question was fairly submitted to the jury. It is true the court said—" The evidence connecting the prisoner with this crime is circumstantial." This seems to assume that a crime was committed; but it must be remembered that the court had previously submitted to them the question whether Way's death was the result of an accident or of a crime. We think the jury could not have understood from this casual expression that the court intended to withdraw that question from their consideration, or that he was expressing any opinion on that subject. He incidentally alluded to it as a crime in explaining the nature and effect of circumstantial evidence. We cannot believe that it had the effect of misleading the jury. To suppose that it did imputes to them much less than ordinary intelligence. To grant a new trial for such an unguarded expression (if it was such), would render precarious many verdicts and would not subserve the cause of justice. Besides, there was no assumption that the crime was committed by the prisoner, for in that immediate connection the question as to his guilt or innocence was clearly, fully and impartially submitted to the jury.

The judge told the jury, in substance, that in his opinion

the evidence was not equivalent to the testimony of two witnesses, and did not warrant them in finding a verdict of murder in the first degree; and added, " and I believe, gentlemen, I may say that the State does not claim that." We cannot regard this as a direction how to find a verdict; it was simply eliminating from the case a question which the State did not make, and therefore one they need not consider. In doing so he expressed an opinion that the higher and greater offense was not proved. Of this the accused cannot complain. The point of his complaint is that the jury might infer that the court thought the evidence was sufficient to warrant a verdict of murder in the second degree, and that it was the duty of the jury to return such a verdict. This is hypercritical; at least it is hardly a just criticism. The judge was bound to submit that question to the jury without expressing any opinion of his own. It is difficult to conceive how it could have been more impartially and justly submitted than it was.

It is unnecessary for us to say much about the evidence. The legal principles applicable to a motion for a new trial for a verdict against the evidence are so firmly established and so well understood that it is unnecessary to repeat them. For that reason we are not accustomed to report cases that depend wholly upon a matter of fact, the weight of evidence. It can serve no useful purpose for us to go through with the voluminous testimony in this case, analyze it, weigh it, and give our opinion upon it. Suffice it to say, that aside from the testimony of Mason, one of the witnesses for the defense, the evidence seems to make a pretty strong case against the accused. The jury may have regarded Mason's testimony as wholly unworthy of credit. In that event they were justified in returning the verdict they did. They may have attached some importance to it, and still have been satisfied from all the evidence that Coffee was criminally concerned in the death of Way. In that event we can hardly say that the jury misunderstood the evidence, applied any wrong principle in considering it, or were actuated by any corrupt or improper motive.

We find no error in the judgment and do not grant a new trial.

In this opinion the other judges concurred.