Archie CHESNEY

v.

Carl ROBINSON, Warden, Connecticut Correctional Institution, Somers.

Civ. No. H-75-181.

United States District Court,
D. Connecticut.

Nov. 13, 1975.

Michael J. Churgin, Stephen Wizner, Yale Legal Services Organization, New Haven, Conn., for petitioner Aviam Soifer, University of Connecticut Law School, West Hartford, Conn., of counsel.

Richard F. Jacobson, Asst. State's Atty., for Fairfield County, Bridgeport, Conn., for respondent.

## MEMORANDUM OF DECISION

BLUMENFELD, District Judge.

Archie Chesney, presently an inmate at the Connecticut Correctional Institution, Somers, Connecticut, brings this petition for a writ of habeas corpus to challenge the validity of his conviction for second degree murder. This court has jurisdiction pursuant to 28 U.S.C. §§ 2241 and 2254. Petitioner alleges that he was denied his sixth amendment right to confront one of the witnesses who testified against him and that as a result he was denied the due process guaranteed by the fourteenth amendment.

### I. *The History of this Case*

Petitioner was indicted by a grand jury for the crime of murder in the first degree on March 8, 1971. A jury in Fairfield County Superior Court returned a verdict of murder in the second degree on May 28, 1971. On June 4, 1971, petitioner was sentenced to a term of life imprisonment. Appeal was taken to the Connecticut Supreme Court, which affirmed the conviction. *State v. Chesney,* Conn., 36 Conn.L.J. No. 4, at 21 (July 23, 1974). The United States Supreme Court denied certiorari. 419 U.S. 1004, 95 S.Ct. 324, 42 L.Ed.2d 280 (1974).

At the trial the State presented evidence to show that the decedent, Robert Lubas, and a companion, James Lindsey, went to an apartment where they met with several other persons, including the petitioner. Lindsey, testifying as a witness for the prosecution, stated that Chesney and Lubas went down the hallway into the kitchen where some other persons were present. He testified that he heard an argument and a popping noise, and then saw Lubas walking down the hall holding his chest. Lindsey then testified as follows:

"Q. What, if any thing, was he doing as he walked down the hall?

"A. He was holding his chest.

"Q. Did you have an opportunity to observe his face at all?

"A. Yes, I did.

"Q. How did his face appear to you?

"A. Just like a little worried look on his face.

"Q. How was he manipulating, was he able to walk all right?

"A. Yes, he was like just leaning on the wall, you know, walking out.

"THE COURT: Did you say leaning on the wall?

"THE WITNESS: You know, like brushing against the wall.

"THE COURT: Please keep your voice up. The jury must hear you.

"Q. Did you have some conversation with Robert Lubas

"A. Yes, I did.

"Q. Using the exact words that were spoken between you, Mr. Lindsey, would you tell the ladies and gentlemen of the jury what was said at that time?

"A. Well, he said, 'Let's get the fuck out of here,' and then I says to him, 'What happened?' He

said, 'The bastard shot me.' I said, 'Who?' and he said, 'Archie.'"

Tr. 30–31.

On cross-examination, petitioner's attorney attempted to question Lindsey about an inconsistency between his testimony at trial and his earlier testimony before the grand jury. It was Chesney's contention at that time, and he so testified at the evidentiary hearing on this petition, that in his grand jury testimony, Lindsey had not quoted the decedent as identifying Chesney as his assailant. Since Lindsey admitted having given a prior inconsistent statement to the police at the start of their investigation, and since Lindsey himself had been a suspect in the slaying, petitioner contended that the additional factor of an inconsistent statement to the grand jury would have greatly assisted him in convincing the jury that Lindsey had fabricated the purported identification. This, in turn, would have greatly weakened the prosecution's case since there was no other witness, either to the shooting or to the incriminating statement.

The prosecutor objected to the attempt to show the inconsistent testimony before the grand jury on the grounds that a failure to testify could not be inconsistent with a later statement. Tr. 39. The trial court sustained the objection on the joint grounds that a prior omission would not be inconsistent and that an attempt to question a witness concerning his prior testimony before a grand jury would violate the Connecticut rule of secrecy of grand jury proceedings. Tr. 40–41.

Petitioner contends that this ruling deprived him of the constitutionally guaranteed right to cross-examine the adverse witnesses presented against him in a criminal proceeding.

## II. *Exhaustion*

In its amended return to the petition, the State argues that the constitutional claim raised in this court was not directly passed on by the Supreme Court of Connecticut in the appeal from the petitioner's conviction. The State argues that he is still free to raise the issue either in a motion for a new trial, Conn. Gen.Stat.Ann. § 52–270, or in a state habeas proceeding, Conn.Gen.Stat.Ann. § 52–466; and therefore the petition should be dismissed for failure to exhaust state remedies. 28 U.S.C. § 2254.

The question, however, is not whether the State Supreme Court passed on the constitutional issue, but rather whether the "substance" of the claim was properly presented to them. *Picard v. Connor*, 404 U.S. 270, 278, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). Petitioners cannot be deprived of their timely access to a federal court by the failure of a state court to decide a properly presented constitutional issue. *Cf. Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).

In this case the constitutional issue was before both of the state courts which passed on the question. In the State Supreme Court, petitioner framed the issue raised as: "2. Did the court err in refusing cross examination of a witness as to his testimony before the grand jury?"[1] At the trial level the record shows that that court also was aware of the constitutional dimensions of the petitioner's position.[2]

In his brief on appeal, petitioner relied heavily on *Chambers v. Mississippi* and *Williams v. Florida*, 399 U.S. 78, 90 S.Ct 1893, 26 L.Ed.2d 446 (1970).[3] In

---

1. Brief of Defendant at 1, *State v. Chesney*.

2. During argument outside the presence of the jury the court stated:
   "Now, if you can show me some Connecticut case or some United States Supreme Court decision which upholds your position, Mr. Galluzzo, I shall certainly consider it."
   Tr. 41.

3. Brief of Defendant, *supra* note 1, at 5–7.

his motion for reargument, petitioner again relied explicitly on *Chambers.*[4] Though the Connecticut Supreme Court did not address the issue in its decision, and denied the motion to reargue, the substance of the claim was presented to that court for its consideration. Petitioner has fulfilled his duty to exhaust his state remedies, and the merits of his petition are thus properly before this court.

### III. *The Constitutional Issue*

■ Evidentiary errors committed during the course of a state criminal trial are not subject to review in a federal habeas corpus proceeding unless such errors rise to constitutional dimension. *Jones v. Swenson,* 469 F.2d 535, 538 (8th Cir. 1972); *United States ex rel. Castillo v. Fay,* 350 F.2d 400, 401 (2d Cir. 1965); *Ferraro v. Connecticut,* No. B–74–288 (D.Conn., Sept. 8, 1975). However, the substantial denial of the right of cross-examination is markedly distinguishable from the erroneous exclusion of evidence.

■ In this case the petitioner claims that the decision of the trial court denied him the right to an effective cross-examination, which the Supreme Court has described as "constitutional error of the first magnitude" which "no amount of showing of want of prejudice would

cure." *Smith v. Illinois,* 390 U.S. 129, 131, 88 S.Ct. 748, 750, 19 L.Ed.2d 956 (1968). Consequently this court is free to review the state court determination.

■ The determination of the Connecticut Supreme Court does not purport to be based solely on the Connecticut provisions for secrecy of grand jury proceedings. The relevant part of the opinion states:

"The proceedings of a grand jury are informal and untranscribed. Moreover, they are conducted in secret. *State v. Menillo,* 159 Conn. 264, 274, 268 A.2d 667. Thus, the form and manner in which the inquest was conducted relative to this witness, whether the witness had been asked to relate all the relevant facts or whether he had been asked questions which would have elicited the omitted facts, is unknown. It cannot be stated with any degree of certainty that an omission in testimony before the grand jury constituted an inconsistency by which to impeach the witness' present testimony. See *State v. Mosca,* 90 Conn. 381, 391, 97 A. 340. Under these circumstances, the secrecy of the grand jury proceedings could not be invaded. See *State v. Coffee,* 56 Conn. 399, 410, 16 A. 151; *State v. Fasset,* 16 Conn. 457, 467."

36 Conn.L.J. No. 4, at 22.[5]

---

4. "For the State to deny transcription on the one hand, then deny cross examination because there is no transcript, is to bootstrap procedure into injustice. If Lindsey should have told the Grand Jury about the decedent's statement and did not, that is important evidence. To permit evidence to be lost to a defendant does not comport with modern standards of justice and fairness. *Chambers v. Mississippi,* [410 U.S. 284, 93 S.Ct. 1038] 35 L.Ed.2d 297 (1973)."
Defendant's Motion to Reargue, at 4–5.

5. The cases upon which the court relies, while they do deal with grand jury secrecy, do not support the court's position. In *State v. Fasset,* 16 Conn. 457, 466–67 (1844), the court states:
"And it was early decided, that a grand-juror should not be allowed to swear what was give in evidence [*sic*] before the

grand-jury, because he is sworn not to reveal the secrets of his companions. . . . An exception to this may be found when a witness testifies differently on the trial before the petit jury, from what he did before the grand-jury: then the grand-jury may be called to contradict him on that trial . . . ."

In *State v. Coffee,* 56 Conn. 399, 410, 16 A. 151, 152 (1888), the court cites *Fasset, supra,* with approval, and states:
"Perhaps it would be proper to say that the oath has this implied qualification, that the testimony is to become secret unless a disclosure is required in some legal proceeding. It does not seem that the policy of the law should require it to be kept secret at the expense of justice."

Regardless of whether the Connecticut Supreme Court intended to effect a change in its law, or simply overlooked the critical ex-

Nor does the court deny that a failure to testify to a fact which would naturally have been mentioned is legally as inconsistent as a specific prior statement to the opposite effect.[6] Instead, the reasoning of the court appears to be that, since the grand jurors are sworn to secrecy,[7] and since there is no transcript of the grand jury proceedings,[8] there is no way in which the trial judge could properly determine the preliminary issue of whether a statement or omission before the grand jury was sufficiently inconsistent to justify its introduction for impeachment purposes.[9]

This ruling, as affirmed by the Connecticut Supreme Court, deprived the petitioner of his opportunity to fully present to the jury his theory that the chief prosecution witness had fabricated a significant portion of his testimony, and, in particular, the damaging accusation by the decedent.

It is true that the petitioner was able to demonstrate a motive for fabrication, both from the fact that Lindsey and the decedent were friends and from the fact that Lindsey himself had been considered a suspect in the killing. The petitioner also demonstrated that Lindsey had given a completely inconsistent account of the shooting in his statement to police. However, it is clear that the identification by the decedent was especially critical. The jury asked that it be reread to them (Tr. 270–71), and the Connecticut Supreme Court quoted it verbatim in its summary of the facts which the jury could have found. *State v. Chesney,* 36 Conn.L.J. No. 4, at 21. Lindsey was the only witness who testified to the identification. Had the petitioner been able to convince the jury that Lindsey had invented his testimony, the State's case would have been greatly weakened. Restricting questioning concerning such critical testimony involves more than what the Connecticut Supreme Court characterized as a permissible exercise of a trial judge's discretion concerning the proper scope of cross-examination.

■ This court is not required to find that the trial would have had a different result had the petitioner been allowed to carry out his line of impeachment. As Chief Justice Burger stated in *Davis v. Alaska,* 415 U.S. 308, 317, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347 (1974):

"We cannot speculate as to whether the jury, as sole judge of the credibility of a witness, would have accepted this line of reasoning had counsel been permitted to fully present it. But we do conclude that the jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on [the witness'] testimony which provided 'a

---

ceptions to the rule of secrecy set out in these earlier decisions, the effect on petitioner's constitutional rights is the same.

6. *See Schurgast v. Schumann,* 156 Conn. 471, 482, 242 A.2d 695, 701 (1968) ; McCormick, *Evidence* § 34 (2d ed. 1973).

7. Conn.Gen.Stat.Ann. § 1–25.

8. *State v. Delgado,* 161 Conn. 536, 539–40, 290 A.2d 338, 340 (1971). The failure to provide a transcript has been consistently upheld against constitutional challenge. *See, e. g., United States v. Ayers,* 426 F.2d 524 (2d Cir.), *cert. denied,* 400 U.S. 842, 91 S. Ct. 85, 27 L.Ed.2d 78 (1970).

9. This appears to ignore two possible ways, other than by use of a transcript, in which the inconsistency could both have been shown as a preliminary matter, and proved if necessary, if the witness were to have denied his earlier inconsistent omission. The first would have been to call the grand jurors themselves. This possibility seems implied in the Connecticut cases cited in note 5, *supra.* The second would have been for the defendant himself to testify to the inconsistency if he so chose. Under the Connecticut practice, the accused is normally present during testimony before the grand jury. This allows the accused the opportunity to question the witnesses before the grand jury in an attempt to demonstrate the weaknesses in the State's case. *State v. Menillo,* 159 Conn. 264, 268 A.2d 667 (1970) ; *State v. Hamlin,* 47 Conn. 95 (1879). The accused is not sworn to secrecy. Conn.Gen. Stat.Ann. § 1–25.

crucial link in the proof . . . of petitioner's act.' *Douglas v. Alabama*, 380 U.S. [415], at 419 [85 S.Ct. 1074, 13 L.Ed.2d 934] [1965]."

*See also, United States ex rel. Washington v. Vincent*, 525 F.2d 262 (2d Cir. 1975) at 267–268.

■ The interest which Connecticut asserts in the secrecy of grand jury proceedings cannot outweigh the importance of the petitioner's right to cross-examine adverse witnesses. In *Chambers v. Mississippi*, 410 U.S. at 295, 93 S.Ct. at 1046, the Supreme Court stated:

"The right of cross-examination is more than a desirable rule of trial procedure. It is implicit in the constitutional right of confrontation, and helps assure the 'accuracy of the truth determining process.' *Dutton v. Evans*, 400 U.S. 74, 89 [91 S.Ct. 210, 27 L.Ed.2d 213] (1970); *Bruton v. United States*, 391 U.S. 123, 135–37 [88 S.Ct. 1620, 20 L.Ed.2d 476] (1968). It is, indeed, 'an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal.' *Pointer v. Texas*, 380 U.S. 400, 405 [85 S.Ct. 1065, 13 L.Ed.2d 923] (1965). Of course, the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. *E. g., Mancusi v. Stubbs*, 408 U.S. 204 [92 S.Ct. 2308, 33 L.Ed. 2d 293] (1972). But its denial or significant diminution calls into question the ultimate ' "integrity of the fact-finding process" ' and requires that the competing interest be closely examined. *Berger v. California*, 393 U.

S. 314, 315 [89 S.Ct. 540, 21 L.Ed.2d 508] (1969)."

In *Davis v. Alaska*,[10] the right to cross-examine was held to outweigh the State's interest in maintaining the secrecy of juvenile court proceedings, an interest which had been more consistently asserted than the interest in question here, which apparently has been interpreted in the present case to prohibit a practice which had previously been approved.[11]

In the analogous situation the Supreme Court has held, as a matter of supervision over the lower federal courts, without reaching the constitutional issue, that in federal criminal proceedings the interest in secrecy of grand jury proceedings must yield to the interest in searching cross-examination in circumstances similar to those presented here. *Dennis v. United States*, 384 U.S. 855, 86 S.Ct 1840, 16 L.Ed.2d 973 (1966). *See also* McCormick, *Evidence* § 113 (2d ed. 1973).

It is the conclusion of this court that the petitioner, in his trial, was denied the right to an adequate cross-examination, guaranteed to him by the sixth and fourteenth amendments, and that as a result his conviction cannot stand. Petitioner is therefore presently in custody in violation of the Constitution of the United States. 28 U.S.C. § 2254.

It is Ordered that a writ of habeas corpus should issue out of this court discharging the petitioner, Archie Chesney, from custody unless within twenty (20) days the State of Connecticut vacates the judgment of conviction and schedules an early retrial.

---

10. Although *Davis* was decided after the Connecticut Supreme Court had rejected the petitioner's appeal, the decision did not establish a new rule of constitutional law, but rather applied a settled rule of law to a new set of facts. *Cf. Williams v. United States*,

401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 and *Mackey v. United States*, 401 U.S. 667, 675, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971) (Harlan, J., dissenting).

11. *See* note 5, *supra*.