# STATE OF CONNECTICUT *v.* MATTHEW RIVERA

Superior Court        Judicial District of      File No. CR940464212
Hartford-New Britain at Hartford

Memorandum filed April 22, 1997

*Dennis J. O'Connor*, senior assistant state's attorney, for the state.

*Michael A. Georgetti*, for the defendant.

KOLETSKY, J. The defendant moves in limine to preclude the prosecution in the present case from offering, in its case-in-chief, grand jury testimony of the defendant given before an investigatory grand jury convened under General Statutes § 54-47a et seq. The defendant cites Connecticut's long history of secrecy of grand jury proceedings, while the state argues that public policy requires the use of such testimony to make the investigative grand jury an effective "crime fighting tool." Both

1

counsel claim, and the court agrees, that this is an issue that has not been addressed by any appellate court in Connecticut. The court has not been able to find any trial court opinions on this issue either.

Preliminarily, the defendant also claims that his statement was involuntary, since he testified before the grand juror under subpoena. Beyond the state and the defendant stipulating that the defendant was under subpoena when he testified, the defendant declined to offer further evidence as to involuntariness. The court finds that there is no factual predicate to support a state or federal constitutional violation on this ground.

The fact that grand jury proceedings are and have been, for a "time whereof the memory of man runneth not to the contrary,"[1] secret, is beyond dispute. That our common law contains "a long-established policy of secrecy . . . older than our Nation itself"; (citation omitted; internal quotation marks omitted) *Pittsburgh Plate Glass Co.* v. *United States*, 360 U.S. 395, 400, 79 S. Ct. 1237, 3 L. Ed. 2d 1323 (1959); is clear. Historically, the only exceptions to this rule of grand jury secrecy have been in a trial for perjury committed by a witness before the grand jury, or impeachment of a witness at trial who has testified differently from his grand jury testimony. *State* v. *Fasset*, 16 Conn. 457, 467 (1844). Neither exception is claimed here.

In 1888, in a case where a defendant who was present as a prisoner in the grand jury room while the grand jury was hearing testimony to decide whether the prisoner should be indicted, the use of the prisoner's incriminatory statements was permitted. That decision, however, was in the context of statements which "were not and could not have been properly elicited by the grand jury. [The grand jury] had no right to allow the prisoner to testify, or even to make a statement. His statements

---

[1] 1 W. Blackstone, Commentaries on the Laws of England (1807) p. 473.

were wholly voluntary, and they appear to have been made when the proceedings were at a standstill—probably while waiting for a witness to come in." *State* v. *Coffee*, 56 Conn. 399, 413, 16 A. 151 (1888). Our Supreme Court in *Coffee* permitted grand jurors to testify as to statements of the prisoner, but only because the statements were not themselves part of the grand jury proceedings. Id. *Coffee* refers to cases from several other jurisdictions where the rule is different from that in Connecticut, and has sometimes been read to criticize *State* v. *Fasset*, supra, 16 Conn. 457, but it appears that the court in *Coffee* notes only that Connecticut law is somewhat inconsistent with the law in other jurisdictions with respect to grand jury secrecy. *State* v. *Coffee*, supra, 416. *Coffee* concludes that grand jury secrecy has exceptions limited to "prosecutions for perjury, and to contradicting witnesses." Id., 412. *Coffee* goes on to say that "[w]hether it is wise to go further we will not now undertake to say. It is not probable that many, if any, cases not embraced in one of the two classes named will ever arise." Id.

It is clear to the court that, at common law in Connecticut, the state was unable to use the testimony of an accused given by the accused before the grand jury which indicted him, in its case-in-chief, except in a trial for perjury of the witness before the grand jury. Of course, use for impeachment purposes of the testimony of a witness who had also testified before a grand jury was not likely to occur in the state's case-in-chief under common law. See *State* v. *Whelan*, 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986).

Indeed, the principle of grand jury secrecy even led to a defendant being denied the use of grand jury testimony for cross-examination in *State* v. *Chesney*, 166 Conn. 630, 353 A.2d 783, cert. denied, 419 U.S. 1004, 92 S. Ct. 324, 42 L. Ed. 2d 280 (1974). This led to the granting of a federal writ of habeas corpus because of

the denial of the right of confrontation. *Chesney* v. *Robinson*, 403 F. Sup. 306 (D. Conn. 1975), aff'd, 538 F.2d 308 (2d Cir.), cert. denied, 429 U.S. 867, 97 S. Ct. 177, 50 L. Ed. 2d 147 (1976).

In 1978, General Statutes § 54-45a was enacted, in apparent response to *Chesney* v. *Robinson*, supra, 403 F. Sup. 306. See *State* v. *Douglas*, 10 Conn. App. 103, 111, 522 A.2d 302 (1987). Section 54-45a[2] provides for stenographic transcripts of grand jury testimony, and, in what the court finds to be a legislative codification of the common law, the statute further provides, in subsection (b) as follows: "The transcript of such proceedings may not be used as evidence in any proceeding against the accused except for the purpose of impeaching a witness, attacking the credibility of a witness or proving inconsistent statements of a witness. The transcript may also be used as evidence in a prosecution for perjury committed by a witness while giving such testimony."

Of course, § 54-45a applies to grand jury proceedings ordered pursuant to General Statutes § 54-45, which, while still "on the books," has been essentially supplanted by the probable cause hearing established by General Statutes § 54-46a (after the constitutional amendment of 1982 which provided for such a hearing in lieu of grand jury indictment). Thus, by its terms, § 54-45a (b) does not apply to investigatory grand juries appointed in accordance with § 54-47a et seq.

The state makes much of a distinction between an investigatory grand jury and an indicting grand jury. The case law, however, does not support such a distinction. "We have not in the past distinguished between investigating and indicting grand juries in recognizing the need to encourage citizen cooperation which underlies the expectation that grand juries normally operate

---

[2] Number 80-313, § 4, of the 1980 Public Acts divided § 54-45a into subsections (a) and (b).

in secrecy. We decline to do so now." *In re Final Grand Jury Report Concerning the Torrington Police Dept.*, 197 Conn. 698, 707, 501 A.2d 377 (1985). Indeed, at common law, Connecticut had both indicting grand juries convened pursuant to the constitutional mandate and a "general, investigatory grand jury known to the common law which could inquire into crimes in general and which had functions substantially the same as our modern so-called 'one-man grand jury' . . . ." *State* v. *Menillo*, 159 Conn. 264, 273, 268 A.2d 667 (1970). Thus, the state's argument that the 1978 legislative enactment of § 54-45a (b) without a similar provision in § 54-47a et seq. is indicative of a legislative intent, is unconvincing.

To the extent that Connecticut has a blanket prohibition against the use of grand jury testimony in the prosecution's case-in-chief, it is surely in a minority of jurisdictions. As noted in *State* v. *Coffee*, supra, 56 Conn. 410–12, most jurisdictions permit disclosure of grand jury testimony whenever it becomes necessary in the course of justice. According to Professor Wigmore, "the *admissions* of a party made in testifying before the grand jury are admissible against him although he does not take the stand at the trial." (Emphasis in original.) 8 J. Wigmore, Evidence (McNaughton Rev. 1961) § 2363, pp. 738–39; *State* v. *Campbell*, 73 Kan. 688, 710, 85 P. 784 (1906); see, e.g., *People* v. *Downer*, 192 Colo. 264, 270, 557 P.2d 835 (1976) (holding that "where a defendant, with the advice of counsel, volunteers to testify before a grand jury and is thoroughly advised of his rights, his testimony, like other prior statements by him, can be admitted as substantive evidence at his subsequent trial"); *Nance* v. *State*, 331 Md. 549, 571, 629 A.2d 633 (1993) (noting that grand jury testimony of defendants could have been considered by jury as substantive evidence); *People* v. *Rose*, 224 App. Div. 2d 643, 639 N.Y.S.2d 413 (1996) (finding grand jury testimony properly introduced into evidence as admission).

Indeed, under rule 6 (e) of the Federal Rules of Criminal Procedure, use of grand jury testimony in the prosecution's case-in-chief appears to be permitted as an admission under rule 801 (d) (2) (A) of the Federal Rules of Evidence. *Metzler* v. *United States*, 64 F.2d 203, 206 (9th Cir. 1933).

General Statutes §§ 54-47a through 54-47h govern Connecticut's investigatory grand jury. Although none of these provisions explicitly indicate whether the prosecution can use a defendant's testimony before an investigatory grand jury in its case-in-chief, §§ 54-47a through 54-47h do, however, provide various disclosure provisions, which exhibit a legislative intent of openness as to the revised investigatory grand jury procedure.[3]

General Statutes § 54-47e provides in pertinent part that "[a]ny investigation by the investigatory grand jury shall be conducted in private, provided the panel, by a majority vote, may order the investigation or any portion thereof to be public when such disclosure or order is deemed by the panel to be in the public interest."

General Statutes § 54-47g (a) provides in pertinent part that "[w]ithin sixty days of the conclusion of the

---

[3] Effective October 1, 1985, the legislature enacted Public Acts 1985, No. 85-611, entitled: "An Act Concerning The Investigatory Grand Jury System," which has been codified in General Statutes §§ 54-47a through 54-47h. See *State* v. *Blasko*, 202 Conn. 541, 545, 522 A.2d 753 (1987). "The new act substituted, as authority for the appointment of a grand jury, the approval of a panel of three Superior Court judges, whereas under the prior law an applicant could obtain the requisite permission from the Superior Court or from the chief court administrator. Under the new act, but not under the old, an applicant requesting the appointment of an investigatory grand jury must demonstrate a reasonable belief that there is probable cause to believe that crimes have been committed. Furthermore, the new act describes in detail the information that must be furnished in the application, including the identity of the applicant and his authority to make the application, the facts and circumstances that justify his reasonable belief that an investigation will lead to a finding of probable cause, and any additional facts and evidence the panel may require to evaluate the application. The act also limits the duration of authorized grand juries to six months, subject to

investigation, the investigatory grand jury conducting such investigation shall file its finding with the court . . . and shall file a copy of its finding with the panel and with the Chief State's Attorney or a state's attorney if such Chief State's Attorney or state's attorney made application for the investigation. The stenographer shall file any record of the investigation with the court . . . and the panel and the Chief State's Attorney or a state's attorney, if such Chief State's Attorney or state's attorney made application for the investigation, shall have access to such record upon request made to the clerk of the court without a hearing. Such finding shall state whether or not there is probable cause to believe that a crime or crimes have been committed."

Section 54-47g (a) provides further that "[e]xcept as otherwise provided in this section, any part of the record of the investigation not disclosed with the finding pursuant to subsection (b) shall be sealed, provided any person may file an application with the panel for disclosure of any such part of the record."

Subsection (b) of § 54-47g provides in pertinent part that "[t]he finding of the investigation shall be open to public inspection and copying at the court where it has been filed . . . unless within that period the Chief State's Attorney or a state's attorney with whom the finding was filed files a motion with the investigatory grand jury requesting that a part or all of such finding not be so disclosed." Subsection (c) of § 54-47g provides for a hearing before the investigatory grand jury.

Subsection (f) of § 54-47g provides that "[n]otwithstanding the existence of an order of nondisclosure under this section, any witness may apply in writing to the presiding judge . . . for access to and a copy of his own testimony. Any witness shall be allowed access,

express but limited extension, to avoid the continuation of protracted and indefinite grand jury investigations." Id., 549–50.

at all reasonable times, to the record of his own testimony and be allowed to obtain a copy of such record unless said judge . . . finds after a hearing and for good cause shown that it is not in the best interest of justice to allow the witness to have access to and a copy of the record of his testimony."

Subsection (g) of § 54-47g provides in pertinent part that "[n]otwithstanding the existence of an order of nondisclosure under this section, the presiding judge . . . shall grant any written request of a person accused of a crime as a result of the investigation to have access, at all reasonable times, to the record of his own testimony and to obtain a copy of such record."

In short, the investigative grand jury's records are open to the public unless the court orders that all or part of the record not be disclosed. Moreover, even where the court enters a nondisclosure order: (1) witnesses may obtain a record of their own testimony, unless the court finds that the best interests of justice do not permit it; and (2) accuseds have a right to a record of their own testimony and a copy of such.

Connecticut courts have looked to federal law for guidance in the area of grand juries, because "[t]he indicting grand jury governed by federal rule and the investigatory grand jury governed by § 54-47 are similar in function." *In re Investigation of the Grand Juror into Cove Manor Convalescent Center, Inc.*, 4 Conn. App. 544, 551, 495 A.2d 1098 (1985), appeal dismissed, 203 Conn. 1, 522 A.2d 1228 (1987) (*Cove Manor*). Indeed, in *Cove Manor*, the trial court was reversed for ordering the release of testimony before an investigatory grand jury for use by an administrative agency in a license revocation proceeding, but only because of that court's failure to hold a hearing to determine whether a "particularized need" could be shown. Id., 558. This followed

federal law, which does permit use of grand jury testimony by prosecutors in a government case-in-chief. The Appellate Court in *Cove Manor* stated that "[b]y holding that the trial court erred in releasing the grand juror's report and transcript since the department [of health services] here failed to establish the requisite particularized need, this court does not foreclose the department from satisfying that requirement when this action is remanded to the trial court." Id. *Cove Manor* dealt with a request from the department of health services (department) to obtain grand jury transcripts involving an investigation of a nursing home operator who, as a result of the grand jury investigation, had been convicted, upon his plea of nolo contendere, of several fraud counts. The department wished to obtain the transcripts to use them in an administrative proceeding concerning the revocation of the license of the nursing home operator who was convicted as a result of the grand jury investigation. Id., 545–46.

It seems anomalous, at first blush, to contemplate that grand jury transcripts can potentially be used in an administrative proceeding but cannot be used in a criminal trial of that same person, now protected by the full panoply of rights afforded to criminal defendants.

There are, to be sure, numerous policy reasons for preserving grand jury secrecy, and while many of those reasons no longer obtain after the conclusion of the grand jury proceedings, certainly the thought that witnesses who learned that their testimony was not sacrosanct will be deterred from future uninhibited testimony, as will others not involved in that particular grand jury process. See id., 557.

Our Supreme Court has instructed that where the traditional secrecy of grand jury proceedings is well entrenched in the common law, any change in that law must be strictly construed. *State* v. *Canady*, 187 Conn.

281, 287, 445 A.2d 895 (1982). While the legislature has lessened grand jury secrecy in many ways in recent years, it notably has *not* done so in expressly permitting use by the state of grand jury testimony as evidence. "No radical departure from the long standing policy of preserving grand jury secrecy which is well entrenched in the common law is warranted unless the language of the statute unequivocally expresses such an intent." *In re Investigation of the Grand Juror into Cove Manor Convalescent Center, Inc.*, supra, 4 Conn. App. 554. The court concludes that the common law of Connecticut is still in effect.

That the prosecution has access to testimony from the grand jury proceeding is clear. From that access it is to be presumed that further investigative work should permit the development of evidence from other sources. In the present case, no request for release of grand jury transcripts for use in the state's case-in-chief has been made, nor has there been any attempt to demonstrate a "particularized need." Whether, in a particular case, that would be availing, this court does not now decide.

What this court does decide is that in the present case, in which this defendant was given both a promise and a warning of confidentiality and secrecy as to his testimony,[4] the state cannot use that testimony in its case-in-chief. Indeed, since the grand juror imposed an order of secrecy on the witness as to his testimony, it may well be that the defendant would be precluded from taking the stand to deny the accuracy of the transcript, unless released from that order.

This is an issue which the legislature may wish to address, but the decision to change three centuries of

---

[4] The defendant provided to the court, with the permission of the state, an excerpt of the transcript of his testimony showing that the grand juror indicated, inter alia, that "no one can tell anybody outside this room what questions were asked of you and what answers you gave. So the answers you give will also be confidentially protected."

this state's common law is one that this court does not believe is its function.

The motion in limine is granted and the state is precluded from offering any grand jury testimony as direct evidence in the state's case-in-chief in the present matter.